Gulf, Colorado & Santa Fe Railway Company v. Chas. C. Warner.

| 89 | 475 |
| 90 | 37 |

No. 399.—Decided April 27, 1896.

1. **Fellow Servant Act (Laws 1893, p. 120) Construed—Common Service.**

"Engaged in the common service," as used in the statute, means that the thing or work being performed for the employer, at the time of the accident, and out of which it grew, was performed jointly by the employes sought to be held fellowservants: thus, members of a crew running a train, though each performing different acts in reference thereto, are engaged in the common service by jointly performing the work of managing the train, but are not engaged in the common service with members of a crew running another train over the same road.

2. **Same—Grade of Employment.**

The language of the statute, "neither of said persons being entrusted with any superintendence or control over their fellow-employees" is explanatory of the clause "in the same grade of employment," and the test of difference in grade is the authority of one over the other while engaged in the common service.

3. **Same—Working Together.**

"Working together at same time and place" does not demand an exact coincidence as to either, but only sufficient to afford the employees a reasonable opportunity of observing the conduct of each other, with a view of guarding themselves against injury.

4. **Same—Common Purpose.**

"So a common purpose" means that the acts required of each in the performance

of his duties at the time of the accident must be in furtherance of the common service.

### 5. Same—Department of Service.

The proviso that "nothing herein contained shall be so construed as to make employees * * * fellow-servants with other employees engaged in any other department or service" means any other than the "common service" previously specified and is intended, not to add anything further to the requisites for constituting employees fellow-servants, but .to insure a certain construction of the previous language of the statute.

### 6. Same—Case in Judgment.

A switch crew composed of an engineer, fireman and switchmen under direction of a foreman was engaged in switching cars in a railroad yard, the engineer having no authority to control the switchmen, one of whom he injured by his negligence. Held, that the engineer and the injured switchman were "engaged in the common service" of the the railway company, that they were "in the same grade of employment," were "working together at the same time and place" and "to a common purpose" and were "in the same department or service." They being fellow-servants within the meaning of the statute the employer was not liable for the injury.

### 7. Statutory Construction.

See opinion for change in the order of the language of a statute by amendment held not to imply any intention to alter the effect of a qualifying phrase derived from its position in the original act.

### 8. Same—Proviso.

A proviso may be inserted in an act for the purpose either of adding something to or insuring a certain construction of the preceding language of the statute. See opinion for proviso construed as inserted for the the latter purpose.

QUESTION CERTIFIED by Court of Civil Appeals for the Fourth District in an appeal from Johnson County.

*J. W. Terry,* for appellant.

*Poindexter & Padelford,* for appellee.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals have certified to this court question and explanatory statement as follows:

"On the 7th day of October, 1893, appellee, an employe of appellant at that time, while engaged with his duties as switchman in the railroad yards of appellant, in Cleburne, was injured by a car passing over and crushing his leg. The car that inflicted the injury was being pushed by a locomotive in charge of a switch engineer, who was an employe of appellant, and while switching was being done by a switch crew, of which both appellee and the switch engineer were members. The switch crew consisted of the foreman, the engineer, the fireman, and switchman. The foreman directed the switching as it was his duty to do. The engineer had no authority or control over the switchmen. The switchmen were in the transportation department and the switch engineer in the mechanical department. The yardmaster employed and discharged the switchmen and the master mechanic employed and discharged the engineers. The duties of an engineer require skilled labor, and the duties of a switchman do not.

QUESTION.—Was the switch engineer a fellow servant of the switch-

man who was injured, under the provisions of the fellow servants act of 1893?"

The act referred to, as far as it affects the question certified, is as follows:

"An act to define who are fellow servants, and who are not fellow servants, and to prohibit contracts between employer and employes, based upon contingency of the injury or death of the employes, limiting the liability of the employer for damages.

"Section 1.   Be it enacted by the Legislature of the State of Texas: That all persons engaged in the service of any railway corporation, foreign or domestic, doing business in this State, or in the service of a receiver, manager, or any person controlling or operating such corporation, who are entrusted by such corporation, receiver, or person in control thereof, with the authority of superintendence, control, or command of other persons in the employment of such corporation, or receiver, manager, or person in control of such corporation, or with the authority to direct any other employe in the performance of the duty of such employe, are vice-principals of such corporation, receiver, manager, or person controlling the same, and are not fellow servants of such employe.

"Sec. 2.   That all persons who are engaged in the common service of such railway corporation, receiver, manager, or person in control thereof, and who, while so employed, are in the same grade of employment and are working together at the same time and place, and to a common purpose, neither of such persons being entrusted by such corporation, receiver, manager, or person in control thereof, with any superintendence or control over their fellow employes, or with the authority to direct any other employe in the performance of any duty of such employe, are fellow servants with each other:  Provided, that nothing herein contained shall be so construed as to make employes of such corporation, receiver, manager, or person in control thereof, fellow servants with other employes engaged in any other department or service of such corporation, receiver, manager, or person in control thereof.  Employes who do not come within the provisions of this section shall not be considered fellow servants."  (Gen'l Laws, 1893, p. 120.)

It will be observed that the caption of the act declares its purpose to be "to define who are fellow servants and who are not fellow servants," and that section 2 completely accomplishes such purpose by first defining who are fellow servants and then declaring that "Employes who do not come within the provisions of this section shall not be considered fellow servants."   This section divides all employes into fellow servants and non fellow servants, and gives the distinctive characteristics of the former but not of the latter.   The purpose of the statute was accomplished by limiting and definitely determining the employes who should thereafter be classed as fellow servants for whose negligence the employer should not be responsible to another fellow servant;  and it was unnecessary to deal further with such employes as did not come within this statutory definition of fellow servants, for the employer would be responsible for

their negligence whether they be termed agents, vice-principals or otherwise.

The distinctive characteristics prescribed by the statute as essential to be found concurring and common to two or more employes in order to constitute them fellow servants are: First, they must be "engaged in the common service." As here used "service" means the thing or work being performed for the employer at the time of the accident and out of which it grew, and "common" means that which pertains equally to the employes sought to be held fellow servants; and therefore "common service" means the particular thing or work being performed for the employer, at the time of the accident and out of which it grew, jointly by the employes sought to be held fellow servants. The members of a crew running a train, though each be in the performance of different acts in reference thereto, are all "engaged in the common service," for they are jointly performing the thing or work of managing the train for the employer; but they would not be "engaged in the common service" with the members of a crew running another train for the employer over the same road, for one crew would be jointly performing the thing or work of managing one train while the other would be jointly performing the thing or work of managing the other train. We, therefore, conclude that the engineer and switchman were "engaged in the common service."

Second, they must be "in the same grade of employment." Grade means the rank or relative positions occupied by the employes while "engaged in the common service." This definition, however, gives us no certain means of determining whether given employes are in the same or different grades, for it furnishes no test by which their respective ranks or relative positions "in the common service" can be ascertained.

In the absence of a statutory test the grade would have depended upon the test which might have been adopted by the courts, such as authority, one over another, order of promotion, skill in the service, compensation received, etc. We are of the opinion that the Legislature anticipated and settled this difficulty in the construction of the word grade by the use of the clause "neither of such persons being entrusted with any superintendence or control over their fellow employes, etc.," as explanatory of what was meant by the clause "in the same grade;" thus adopting the most natural test of grade in the construction of the statute, authority one over the other while "engaged in the common service." Probably the most serious difficulty in arriving at the conclusion that one clause was intended as merely explanatory of the other is the fact that the explanatory clause does not immediately follow the one it explains; but this objection is removed when we consider that in the original section as enacted in 1891 the qualifying clause immediately follows the words "same grade" and was evidently intended to explain their meaning. We do not think there was any intention to change the construction of the statute by changing the position of these clauses and expressing the words "of employment" which were clearly implied in said original section which is as follows: "Sec. 2. That all persons who are engaged in the common ser-

vice of such railway corporations and who, while so engaged are working together, at the same time and place, to a common purpose, of same grade, neither of such persons being entrusted by such corporations with any superintendence or control over their fellow employes, are fellow servants with each other; provided, that nothing herein contained shall be so construed as to make employes of such corporation, in the service of such corporation, fellow servants with other employes of such corporation, engaged in any other department or service of such corporation.   Employes who do not come within the provisions of this section shall not be considered fellow servants."   Since the engineer had no authority or control over the switchman, and vice versa, while "engaged in the common service," we conclude that they were "in the same grade of employment."

Third, they must be "working together at the same time and place." While "at" indicates nearness in time and place, it does not demand an exact coincidence as to either, but only that it shall be sufficiently so to afford the employes a reasonable opportunity of observing the conduct of each other with a view of guarding themselves against injury therefrom. We are of the opinion that the engineer and switchman were working together at the same time and place at the time of the accident.

Fourth, they must be working "to a common purpose."   By this is meant that the acts required of each in the performance of his duties at the time of the accident must be in furtherance of "the common service." We are of opinion that the engineer in managing the engine, and the switchman in performing his duties, both having in view the switching of the cars, were working to a "common purpose."

When these four distinguishing characteristics are found concurring and common to two or more employes they must be held fellow servants under the statute, otherwise not.   It is urged that the proviso adds, as another distinguishing characteristic, that they must be in the same department.   A proviso may be inserted for the purpose either of adding something to or of insuring a certain construction of the preceding language of the statute.   This proviso bears upon its face unmistakable evidence of having been inserted for the latter purpose.   It says "provided nothing herein contained shall be so construed as to make employes * * fellow servants with other employes engaged in any other department or service," and to complete the idea we may add the words than "the common service" above specified.   The words "department or service" as here used merely mean a subdivision of business, as running a train, clearing away a wreck, repairing a track, etc., and if employes are at the time of the accident engaged in the same subdivision of business they are also "engaged in the common service" as we have hereinbefore construed that term.   In other words the proviso was merely intended to insure the strict construction above given by us to the words "engaged in the common service."

In so far as section 1 of the act bears upon the question of "who are fellow servants, and who are not fellow servants" we cannot see that it

adds anything to section 2. It merely selects a certain class of employes, who are non fellow servants under the terms of section 2, and declares that they are vice-principals.

It results that we must answer the question certified in the affirmative.