TEXAS CENTRAL RAILROAD COMPANY v. ETTA FRAZIER.

Decided June 22, 1896.

1. Fellow Servants—Same Grade of Employment.

To determine whether two servants, whose relations in other respects bring them within the statutory requirements necessary to constitute fellow servants, are in the same grade of employment the test is whether one has authority or power to superintend, control, command, or direct the other in the performance of his duties.

2. Same—Giving Signals.

Such superintendence or control is not established by the master merely imposing upon one servant the duty of giving signals, whereby another employee would know that the occasion had arisen for him to perform some duty imposed

upon him by the rules governing his employment, leaving him free to perform such duty in his own way under such rules.

**3. Same—Engineer and Brakeman.**

An engineer was a fellow servant of a brakeman employed on the same train, and the fact that he was intrusted by the company with the discretion of determining when the brakes should be applied and signalling therefor did not give him superintendence, control, or authority over the brakeman, nor entitle the latter to recover of his employer for injury received through negligence of the engineer in running over cattle on the track.

ERROR to Court of Civil Appeals, Third District, in an appeal from Hamilton County.

The opinion states the facts.

*Colton & Roberts* and *Baker & Campbell*, for plaintiff in error.— There was no evidence that Neill, the engineer, was vice principal of Frazier as claimed by plaintiffs.

It will be noted that in section one of the Act the provision relied on in this case is made a part of the law, that is: "or with the authority to direct any other employe in the performance of any duty of such employe"; but in section two there is no such provision. So that to make Neal and Frazier fellow-servants it is only necessary that they were working together at the same time and place, to a common purpose, of same grade, and that neither of such persons were intrusted with any superintendence or control over each other. It is not alleged in this case nor is it proven that Neal had any authority of superintendence or control over Frazier, but it is simply claimed that he had authority to direct him in the performance of his duties. And from this it would appear that it was necessary to construe both sections of the Act of 1891, and to determine if possible, what is meant by the two separate and distinct provisions, one giving superintendence, control or command, and the other, authority to direct any employe in the performance of his duties.

That the Legislature lays stress upon these separate characteristics of the vice-principal relation is manifest when we turn to the Act of 1893, for the latter provision is included in both sections in that Act. The first part of the provision, which requires that the person sought to be held as a vice-principal shall be intrusted with the authority of superintendence, control, or command, has reference to the superintendents, agents, and officers of the company, ranging all the way from general manager down to section boss, and would include other employes whose general duty it is to superintend employes of the company. The latter provision, "authority to direct any other employe in the performance of any duty of such employe," evidently contemplates that this direction shall be given by an employe as distinguished from the superintendent, and it contemplates a dual relation, that is, in the performance of some of his duties, one might be a fellow-servant or an ordinary servant, or he might be a vice-principal upon particular occasions, and in the performance of particular acts. This construction is in harmony

with previous decisions, not only of this court but of other courts which have been called upon to pass upon various kind of vice-principal and agents of railway corporations, and where the party relies on the latter provision, that is, where it is sought to hold the company liable for the act of an employe, who is clothed with authority to direct any employe in the performance of his duties, it is necessary to show that, on the occasion in question, the injury was the result of the direction or command given by such employe.

If the facts of this case showed that Neal was vice-principal when blowing the whistle to put down-brakes, or in giving any other command, if any, to the brakeman to apply the brakes, then it might be contended that the company would be responsible to the brakeman for injuries received by him proximately resulting from the direction or command of the engineer, but no such case is made here. The whole theory of the case, and the only act of negligence either alleged or proven, consists in the failure to keep a lookout, and the failure to clear the track and to blow the whistle for the cattle.

In support of the contention here urged, we cite the court to the following statutes and authorities: Acts of 1891, p. 25; Railway v. Warner, 35 S. W. Rep., 364; Railway v. Smith, 76 Texas, 612; Railway v. Reed, 31 S. W. Rep., 1058; Railway v. Williams, 75 Texas, 4; Quinn v. New Jersey Lighterage Co., 23 Fed. Rep., 363; Brick v. Railway, 98 N. Y., 211; 7 Am. & Eng. Encycl. of Law, 842; Deep Mining & Draining Co. v. Fitzgerald, 43 Pac. Rep., 210; Findley v. Russell Wheel & Foundry Co., 66 N. W., 50; Railway v. McGill, 44 Pac. Rep., 302.

*Dewey, Langford, Lindsey & Goodson,* and *Eidson & Allen,* for defendant in error.—The court did not err in charging the jury that "The act of negligence of a superintending agent or officer is in law the act of the company itself," and it did not err in enumerating the facts stated in plaintiff's petition which if proven would entitle her to recover, and said charges nor either of them were upon the weight of evidence. Acts 22nd Legislature, p. 25; Railway v. Randall, 50 Texas, 254; Pierce on Railroads, 368-9.

The entire evidence shows, that in running the train, Neill, the engineer, had authority to superintend, direct and command Frazier in putting on and off the brakes; and that he gave him directions in this regard by a certain blast of the whistle, and that Frazier was required to obey him. The evidence further shows that in pursuance of this authority Neill directed Frazier to put on the brakes, communicating the command with the whistle, and that Frazier, in obedience thereto, went out upon the top of the car, and while engaged in obeying the command was killed by the negligence of Neill in failing to use ordinary diligence to either warn him of his danger or prevent the collision with the cattle by stopping his train or scaring the cattle off the track. The holding of the Supreme Court in G., C. & S. F. Ry. Company v. Warner, recently decided, is in harmony with that of the Court of Civil

Appeals in this case.   In Warner's case it was held by this court that
the switch engineer was the fellow servant of the switchman.   But in
that case the court in stating the facts say, "The engineer had no con-
trol over the switchman."   Here there was lacking the essential author-
ity to direct another employe in the performance of his duty.   The au-
thority of the engineer to direct the brakeman in the performance of
his duty is not a mere obligation on the part of the former to notify
the latter that a certain contingency, understood by both, has arisen, and
that it is necessary for the brakeman to act, but it is an authority to
be used at the discretion of the engineer, and is therefore a power con-
ferred on him.   If a brakeman signal an engineer to stop a train, he is
but performing a mechanical act which will apprise the engineer of a
certain fact and upon which knowledge the engineer will regulate his
action.   In such case it is part of the duty of the party giving the signal
to do so in a certain contingency which has arisen, and he is not the
superior of the engineer to whom he has given the signal.   But when
an engineer sees stock on the track, or is approaching a heavy down
grade, it is a matter within his discretion whether he shall order the
brakes applied, and it is the duty of the brakeman to obey, whether he
knows why the brakes are ordered down or not.   If railroad rules pre-
scribed every occasion upon which brakes are to be applied—if, for in-
stance, within a certain distance of each station, or at down grades of
a certain degree, then the direction of the engineer when such points
are reached would be nothing but a warning to the brakeman to per-
form a duty which the company had already instructed him to do.   The
starting and stopping of a train are intrusted to the engineer, and the
brakeman is but an instrument in his hands, to be used at his discre-
tion for that purpose.   The company's orders to the train are addressed
to the engineer and conductor, who are therefore, as regards the brake-
man, whom they use to carry out their orders, vice-principals of the
company.   The fact that it was within the discretion of the engineer
to order the brakes applied or refrain from so ordering, clothed him
with authority to direct him whose duty it was to apply the brakes and
they could not be fellow servants.   Applying both of these statutory
tests the conclusion would appear inevitable: first, the engineer, Neill,
was the vice-principal of the appellant; second, the engineer was not
the fellow servant of the brakeman.

DENMAN, ASSOCIATE JUSTICE.—Mrs. Etta Frazier, in behalf of her-
self and minor son, sued the Texas Central Railroad Company to recover
damages claimed to have been suffered by reason of the death of her
husband, J. W. Frazier, alleging: (1) that such death was the result of
carelessness of the engineer upon the freight train in running over
some cattle, causing the wreck of the train upon which said Frazier
was one of the brakemen, and (2) that at the time of the accident said
engineer was entrusted by the defendant railroad with the authority to

direct said Frazier in performance of his duties as brakeman, and was therefore a vice-principal of defendant.

The evidence showed that under the rules of the Company the train crew consisted of the engineer, fireman, conductor, and two brakemen, of which the deceased Frazier was one; that as they were running along at about the rate of twenty miles per hour, the engineer, fireman, conductor, and Frazier being on the engine, cattle were discovered lying on the track a short distance in front of the engine, whereupon the engineer gave the signal for brakes and Frazier went back onto the cars for the purpose of setting the brakes, and while he was performing that duty the train ran over the cattle, resulting in a wreck of some of the cars and injuries to Frazier, from which he died. Though it is earnestly disputed by plaintiff in error, let it be conceded, for the purposes of this opinion, that the evidence warranted the jury in believing that the engineer was guilty of negligence resulting in Frazier's death. The evidence showed that, under the rules of the company, (1) the entire train crew were under direction and control of the conductor during the trip; (2) it was the duty of the engineer, whenever in his judgment in the operation of the train it was necessary to have the brakes applied, to give certain signals therefor from the engine, such signals being the only method by which he could order the application of the brakes; (3) upon the giving of such signals by the engineer it was the duty of the brakeman to apply the brakes.

Mrs. Frazier recovered judgment against the railroad, which judgment being affirmed by the Court of Civil Appeals, the Railroad Company as plaintiff in error has brought the case to this court, assigning as error that the Court of Civil Appeals erred in not sustaining its assignment in that court to the effect that the court below erred in rendering judgment for plaintiff because the verdict is without evidence in the record to support it, there being no evidence that the engineer was a vice-principal of the defendant company as claimed by plaintiff.

The question stated in a different form is: were the engineer and the brakeman Frazier fellow-servants under the Act of March 10, 1891, which was in force at the time of the accident? If they were, the judgment must be reversed. In G. C. & S. F. Ry. Co. v. Warner, 35 S. W. Rep., 364, 89 Texas, 475, this court held that under the Act of 1893, which seems to be the same as the Act of 1891 as far as this case is concerned, in order to constitute two persons fellow-servants the following distinguishing characteristics must be found concurring and common to them: (1) they must be engaged in the common service; (2) they must be in the same grade of employment; (3) they must be working at the same time and place; and (4) they must be working to a common purpose. We do not understand that any question is made as to the correctness of the construction placed upon the statute in that case, nor do we understand it to be denied that the first, third and fourth of said characteristics are shown by the evidence to be concurring and common

to the engineer and Frazier in the case before us; but defendant in error denies that they "were in the same grade of employment," for the reason that under the Warner case the test as to whether they were in the same grade of employment was decided to be whether one had authority over the other while engaged in the common service, and the evidence here shows that the engineer had authority over Frazier in that he had the power by signal to direct him to apply the brakes.

The purpose of the statute was to impute to the master the negligence of an employe upon whom he has conferred authority or power to influence the action or volition of another employe in the performance of his duties. Under the common law rule, as settled in this State before the statute, the negligence of an employe would not have been imputed to the master unless he had the power to employ and discharge, it being assumed that such power was necessary to subject the will of the latter to that of the former.

The statute, however, is based upon the theory that the authority or power in one employe to superintend, control, or command, or direct another employe in the performance of his duties, as effectually influences and subjects to the former the will of the latter as does the power to employ and discharge. But it was not the purpose of the statute to impute to the master the negligence of an employe upon whom he had conferred no such power, but had merely imposed the duty, in certain contingencies arising in the course of his employment, of giving a signal whereby another employe would know that the occasion had arisen for him to perform some duty imposed upon him by the rules governing his employment, leaving such employe free to perform such duty in his own way under such rules. In such a case there is no subjection of the will of one to that of the other.

Under the common law rule as established in Ohio there is imputed to the "master the negligence of a servant to whom he has delegated authority over other servants." In the case of Railway v. Ranney, reported in 5 Am. & Eng. R. R. Cases, 533, the question before the Supreme Court of Ohio was whether an engineer who gave the signal for the brakesman to take off the brakes was in so doing exercising any authority over the latter. Upon this question the court say: "Indeed, the only pretence found in the testimony for the claim of defendant in error that brakemen are subordinate to the engineer of the train is found in the fact that it is the duty of brakemen to observe and obey certain signals given by the engineer, to-wit: Rule 18. 'One long blast of the whistle is the warning of the approach of a train; one short blast is a signal for putting down brakes and stopping the train; two short blasts for releasing the brakes and starting the train; three for backing the train.' It is contended that the signals are in the nature of orders or commands which the engineer is authorized to give to brakemen, which they are bound to obey; and, hence, the relation of superior and subordinate is created. A majority of the court do not so understand either

the purpose or effect of the rule. These signals are so named properly, and are intended to notify all concerned of the thing signified. They are addressed to the conductor as well as brakemen, and it is the duty of the conductor to see that brakemen perform the duty signified. This duty is imposed upon the brakemen by force of the rule itself, and not by virtue of any authority vested in the engineer over the brakemen. The signal is a mere notice. The rule is the order of the company to the brakemen directly. Suppose a train is signalled by a station agent, as this train was, to stop for orders. It thereby becomes the duty of the conductor as well as of each employe on the train to stop for orders; and yet no one can contend that such station agent who gives the signal is the superior, and train crew subordinate employes of the company within the meaning of the rule under consideration. A variety of signals under a variety of circumstances are required to be given by different employes of the company to signify that an occasion exists for the performance of a particular duty; but it would be absurd to hold that in each case the employe giving the signal is a superior servant, to whom all others to whom information is thus communicated are subordinated; so that the company would be responsible to them for any act of negligence of the employe who gave the signal, whether such negligence was in giving the signal or in the performance of other duties." (Railway v. Camp, 65 Fed. Rep., 953.)

We are of the opinion that the signal given to the engineer for brakes was a mere notice to the brakesman Frazier that the occasion had arisen for him to perform a duty imposed upon him by the rules; that the fact that the engineer was intrusted by the company with the discretion of determining when the brakes should be applied and to signal therefor, did not give him any "authority of superintendence, control, or command," or "authority to direct" Frazier in the performance of his duties; that Frazier in attempting to set brakes in the performance of his duties was governed and controlled by the direction and command of the rules, and not of the engineer, and that therefore under the statute they were "in the same grade of employment" and fellow servants. It follows that the assignment of error was well taken and that the judgments of the trial court and Court of Civil Appeals must be reversed and the cause remanded.

*Reversed and remanded.*