## TEXAS & PACIFIC RAILWAY COMPANY v. J. R. HEMPHILL.

Decided December 11, 1909.

**1.—Personal Injuries—Expenses—Proof.**

In a suit for damages for personal injuries, in proof of the allegation that plaintiff had incurred expenses for medicine and medical attention, the extent of the evidence was that plaintiff was treated by physicians who prescribed medicines, and that for medicines he was charged the sum of $40, and for doctor's bills, about $90. Held, not sufficient to prove that said expenses were reasonable and therefore not sufficient to support a judgment for said expenses.

**2.—Same—Railroad Crossing—Proximate Cause—Charge.**

A railroad company is not liable for injuries resulting from horses becoming frightened upon a highway at the mere sight of its trains, or the noises necessarily incident to the running of trains and the operation of the same. Evidence considered, and held not sufficient to show that the negligence alleged by plaintiff was the proximate cause of the injuries received by him when his team became frightened by a passing train at a railroad crossing, and the refusal of the court to give a requested charge authorizing a verdict for the defendant railroad company for this reason was reversible error.

**3.—Same—Negligence—Proximate Cause.**

While it is negligence as matter of law for a railroad company to fail to blow the whistle or sound the bell of the engine when approaching a public crossing, such negligence is not actionable unless it is the proximate cause of an injury.

**4.—Charge—Affirmative Submission of Issue.**

A defendant has the right to have the jury affirmatively instructed upon any group of facts shown by the evidence which would constitute a defense to the action, and the refusal of the court so to do would be reversible error.

Appeal from the County Court of Parker County. Tried below before Hon. R. L. Stennis.

*W. L. Hall* and *H. C. Shropshire,* for appellant.—The evidence being conclusive that the accident occurred from the team taking fright at the ordinary and usual movement and noise of the train, appellant was not liable for appellee's injuries; hence, it was the duty of the trial court to charge the jury to return a verdict for appellant. Houston & T. C. Ry. Co. v. Carruth, 50 S. W., 1036; Hargis v. St. Louis, A. & T. Ry. Co., 75 Texas, 19; Gulf, C. & S. F. Ry. Co. v. Hord, 39 Texas Civ. App., 319; San Antonio & A. P. Ry. Co. v. Belt, 24 Texas Civ. App., 281; Beaumont Pasture Co. v. Sabine & E. T. Ry. Co., 41 S. W., 190; O'Dair v. Missouri, K. & T. Ry. Co., 14 Texas Civ. App., 539; International & G. N. Ry. Co. v. Yarbrough, 39 S. W., 1096; Texas & P. Ry. Co. v. Hamilton, 66 S. W., 797; Galveston, H. & S. A. Ry. Co. v. Graham, 46 Texas Civ. App., 98; Ft. Worth & R. G. Ry. Co. v. Neely, 60 S. W., 282; Hen-

dricks v. Freemont, E. & M. V. Ry. Co., 29 Am. & Eng. R. R. C. (N. S.), 281; Walters v. Chicago, M. & St. P. Ry. Co., 15 Am. & Eng. R. R. C. (N. S.), 606; Chicago, B. & Q. v. Roberts, 91 N. W., 707; Dewey v. Chicago, M. & St. P. Ry. Co., 11 Am. & Eng. R. R. Co. (N. S.), 275; Louisville & N. Ry. Co. v. Survant, 44 S. W., 88; Louisville & N. Ry. Co. v. Survant, 27 S. W., 999; Louisville & N. Ry. Co. v. Howerton, 72 S. W., 760; Abbot v. Kalbus, 39 Am. & Eng. R. R. C., 594; Ohio Val. R. Co.'s, Receiver, v. Young, 8 Am. & Eng. R. R. C. (N. S.), 399; Lake Shore & M. S. Ry. Co. v. Butts, 24 Am. & Eng. R. R. C. (N. S.), 898; Coleman v. Wrightsville & T. Ry. Co., 23 Am. & Eng. R. R. C. (N. S.), 863; Campbell v. New York Cent. Ry. Co., 4 N. Y. Supp., 265; Campbell v. New York Cent. Ry. Co., 130 N. Y., 631; Elliott on Railroads, sec. 1264.

There being no evidence or pleading before the court as to the reasonableness of the expenses incurred by appellee for doctors' bills and medicines, that part of the court's charge which authorized the jury to find for appellee such additional amount as they found was necessarily incurred by appellee for services of such doctor or medicine, is material error. Missouri, K. & T. Ry. Co. v. Belew, 22 Texas Civ. App., 264; Missouri, K. & T. Ry. Co. v. Reasor, 28 Texas Civ. App., 302; Wheeler v. Tyler, S. E. Ry. Co., 91 Texas, 356; Houston & T. C. Ry. Co. v. Rowell, 92 Texas, 147; Missouri, K. & T. Ry. Co. v. Warren, 90 Texas, 566.

Under the facts in this case if the jury believed from the evidence that the escape of steam from appellant's engine was the sole cause of the fright of the team, and of appellee's injuries, then it was the duty of the jury to return a verdict for appellant; hence, it was error for the trial court to refuse to charge the jury as requested so to do by appellant in its special charge No. 9. Galveston, H. & S. A. Ry. Co. v. Simon, 54 S. W., 309.

*Preston Martin,* for appellee.—We submit the following authorities in support of our case: Missouri, K. & T. Ry. Co. v. Taff, 31 Texas Civ. App., 657; Missouri, K. & T. Ry. Co. v. Saunders, 101 Texas, 255; St. Louis, S. W. Ry. Co. v. Kilman, 39 Texas Civ. App., 107; International & G. N. R. Co. v. Glover, 88 S. W., 515; Houston & T. C. Ry. Co. v. Anglin, 45 Texas Civ. App., 41; Paris & G. N. Ry. Co. v. Calvin, 103 S. W., 428; Railway v. Anderson, 2 App. C. C., 203; Markham v. Houston & T. C. Ry. Co., 1 App. C. C., 81; Revised Statutes, art. 4507.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit in the County Court to recover damages in the sum of nine hundred and seventy-five dollars for damages to his person received by him at or near the public crossing upon appellant's railroad near the station of Lambert. It was alleged in substance that appellee, together with his wife and two children, was a passenger in a covered two-seated hack driven by another, who was driving north on the wagon road which at right angles crossed appellant's railway, and that when within a short distance of said crossing one of appellant's trains with-

out warning of any kind suddenly and rapidly approached, frightened the team drawing the hack, which turned, upset the hack, threw out and injured him in the manner set forth in the petition. It was alleged that appellee was on his way to the station, situated north of the crossing, for the purpose of taking passage on one of appellant's passenger trains due soon thereafter. It was charged that appellant was negligent in permitting the location of a freight car and a stack of wood in close proximity to the crossing in such way as to obstruct the view of approaching trains, and also that the operatives of the train which frightened the mules were negligent in failing to blow the whistle and ring the bell for the crossing as provided by the statute. The trial before a jury resulted in a verdict for appellee in the sum of eight hundred and fifty dollars "for personal injury" and "fifty dollars for doctor's bill and medicine," and judgment was entered accordingly.

Upon the trial appellant requested, among others, the following special charge, which was refused and which is made the basis of the fourth assignment of error, viz.: "Gentlemen of the jury, in this case you are charged: In considering of your verdict, if any you find for plaintiff, you will not allow plaintiff any damage or compensation for any sum or amount he may have spent or become liable to pay for and on account of doctor's bills and medicine, because there in no evidence before you showing or tending to show that such amounts so paid or promised to be paid, if any, by plaintiff, are reasonable and you will, therefore, find for the defendant for each and all of those items, if any."

It is quite clear, we think, that in the present state of our decisions this assignment must be sustained, as it is undisputed that there was no evidence before the court showing or tending to show that any sum or amount spent or incurred by plaintiff on account of doctor's bills or medicine was reasonable. The full extent of the evidence on this issue was to the effect that appellee after the accident was treated by physicians who prescribed medicines, and that for medicines he was charged the sum of forty dollars, and that for "doctor's bill about ninety dollars at Mineral Wells." This proof does not meet the requirements of the law. See Missouri, K. & T. Ry. v. Belew, 22 Texas Civ. App., 264, 54 S. W., 1079; Missouri, K. & T. Ry. v. Reasor, 28 Texas Civ. App., 302, 68 S. W., 332; Wheeler v. Tyler S. E. Ry., 91 Texas, 356, 43 S. W., 876; Houston & T. C. Ry. v. Rowell, 92 Texas, 147, 46 S. W., 630, and Missouri, K. & T. Ry. v. Warren, 90 Texas, 566, 40 S. W., 6. For the error here noted, however, we would not ordinarily reverse the judgment and remand the cause, but rather enter a remittitur of the verdict for the "fifty dollars" for doctor's bill and medicine specified by the jury's verdict, as appellee suggested on the oral submission, but the evidence, to say the least of it, leaves us unsatisfied on another material issue of the case.

The evidence is practically undisputed that appellee and the driver of the hack when at a point some sixty or seventy feet south of the railway crossing, discovered the approaching train and immediately stopped; that the mules became frightened and that the train was

making only such noise as would be ordinarily made by a rapidly running train of the kind, save that it was "popping off steam." Appellee testified: "I suppose it was the train that scared the mules; I suppose it was the steam from the engine; I can't say that it was the steam that scared them, but I suppose it was; the steam was popping off; I can't say whether that was what scared the mules or not; I saw them raise on their hind feet, but that is all I recollect of; I don't know that there was anything else there to scare them but the popping off of steam, but I suppose that was what it was."

Appellee's wife, Mrs. J. R. Hemphill, testified: "The train ran in front of the team, and the engine popped off steam and frightened the team, and they arose and whirled around and threw the hack into the wire fence," etc.

The driver, J. W. C. Johnson, testified on this point: "When I discovered the train I stopped just as quick as I could, and not having time to get out and unhitch or turn around or do anything else, I just stood until the train ran up and scared the team; the train scared the team, and they turned around to the right—to the east. . . . My judgment as to the speed of that freight train would be that it was traveling between thirty and forty miles an hour. The train did not make any halt after I discovered it. . . . I heard no signals given by that engine on this occasion in the way of ringing a bell or blowing a whistle; the bell on the engine was not ringing when it crossed the dirt road crossing; the steam from the engine was what frightened my team and caused them to turn around suddenly; the engine was throwing out steam as it passed. . . . I had not gotten by the crossing when my mules began to whirl; it was not an overly long train and didn't take very much time for it to get by; I think when the mules started to whirl around the engine probably had crossed the crossing, and by the time the mules whirled around I guess the engine and some of the box cars had passed over the crossing. . . . I couldn't say exactly how far I drove my team after I saw the train, but not over the length of the mules. I couldn't say exactly how long it was after I saw the train before the engine was immediately in front of me, but it was just an instant. If the team had gone on and not shied it would probably have taken me a minute or more to have gone over the crossing or not so long. I was driving in a moderate walk; between the time I saw the train and the time I stopped my mules I did not have time to get out of the hack and Mr. Hemphill and the other people did not have time to get out; the train was right on us and we didn't have time to do anything." The witness further testified to such state of facts as indicated that his team was familiar with locomotives, passing trains, etc., and hence, not especially liable to be frightened thereby.

In this state of the evidence appellant requested the following instruction, which was refused by the court: "Gentlemen of the jury, in this case you are charged: If you find and believe from the evidence that the plaintiff was injured by reason of the defendant's engine emitting or 'popping off' steam as it passed over the crossing in front of the team behind which plaintiff was riding and traveling

at the time of the accident, and frightening the said team behind which plaintiff was riding at the time of the accident, but· if you further believe that such emission or 'popping off' of steam was not occasioned by the engineer, or by any of defendant's employes in charge of its engine at the time, but that such emission or 'popping off' of steam was occasioned merely by the escape of steam through a proper, usual and necessary apparatus for the escape of an excess of steam, and that such noise or emission or 'popping off' of steam was usual and incident to the use of its engine while under the proper amount of steam, and used in its ordinary manner, then you will find for the defendant, provided you believe that such emission or 'popping off' of steam was the sole cause of the fright of the team and of plaintiff's injuries, if any."

If the "popping off" of steam was the sole cause of the fright of the team and of the consequent injuries, the negligence alleged could not have been proximate causes, and it seems to at least a majority of us that this instruction pointed to a very vital issue raised by the evidence, and that appellant had the right to have it affirmatively presented to the jury. While the evidence as to whether the train gave the customary signals required by the statute sharply conflicted, neither appellee nor his wife nor the driver nor other occupants of the hack testified that they would have stopped on their approach to the crossing earlier than they did had such signals been given. It can not be said as matter of law that a team of horses or mules will necessarily be frightened so as to insure an accident of the kind in question by being placed within sixty or seventy feet of a passing train. There is nothing to show that before the occupants of the hack discovered the train (according to appellee's testimony about 360 feet from the crossing) they knew that the engine was popping off steam and that hence they would have stopped earlier than they did had the whistle been blown eighty rods from the crossing and the bell kept ringing as required by the statute. If so it would have been, appellee and his driver could easily have so testified. In view of their failure to do so we can not properly so conclude. In other words, the evidence sharply presents the issue that at least one of the vital issues of negligence presented by appellee in his pleadings and submitted to the jury by the court, sustained no causal relation whatever to the accident. There is no dispute in the evidence that popping off steam may be one of the usual incidents of the operation of a locomotive, and nothing in the evidence in this case tends to show that in the present instance it was the result of negligent operation or defective appliances, and it is not so alleged. Mr. Elliott in his work on Railroads says, section 1254, "The railroad company is not liable for injury resulting from horses becoming frightened upon a highway at the mere sight of its trains, or the° noises necessarily incident to the running of trains and the operation of the road." See also San Antonio & A. P. Ry. Co. v. Belt, 24 Texas Civ. App., 281, 59 S. W., 607. In the case of Galveston, H. & S. A. Ry. Co. v. Simon, 54 S. W., 311, in an opinion by Justice Neill on motion for rehearing, it was expressly held that a special charge substantially as the one above quoted and requested in this case

should have been given. It has been several times held that while it is negligence as matter of law to fail to blow the whistle and ring the bell as required by article 4507 of the statute, such negligence is not actionable unless it was a proximate cause of injury. It is true in the case before us the court in his general charge in submitting the issues of negligence required the jury to find that such negligence was the proximate cause of appellee's injury, but it was only in a negative way. Appellant had the right to have the jury affirmatively instructed upon any group of facts shown by the evidence which would constitute a defense to the action. See Ry. Co. v. Casseday, 92 Texas, 526; Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 167.

We conclude that the judgment should be reversed and the cause remanded for the errors indicated.

*Reversed and remanded.*

DUNKLIN, ASSOCIATE JUSTICE (dissenting in part).—In view of the fact that the fright of the team by the escape of steam was not inconsistent with plaintiff's contention that the negligence charged was the proximate cause of his injury, but was only a link in the chain of circumstances leading up to the accident and that escaping steam was not an agency operating independently of such negligence, if any there was, I think that the special instruction requested by defendant and approved by the majority was misleading and calculated to cause the jury to overlook the issue as to whether or not the negligence charged, if found to exist, was the proximate cause of the injury, as the expression "proximate cause" is defined and explained by our Supreme Court in Texas & P. Ry. v. Bigham, 90 Texas, 223. I am, therefore, of the opinion that the special instruction was correctly refused, but for other errors discussed in the opinion of the majority, I concur in the conclusion that the judgment of the trial should be reversed and the cause remanded.