## Gulf, Colorado & Santa Fe Railway Company v. P. L. Elmore.

### Decided March 2, 1904.

**1.—Fellow Servant—Brakeman and Station Porter.**

A brakeman on a train was not a fellow servant with the porter who unloaded freight at a station.

**2.—Same—Statutes Construed.**

Under the Acts of 1891, p. 25, sec. 2, and of 1893, p. 120, sec. 2, the respective grade of employment of two servants was determined by the power of superintendence or control; but by the Act of 1897 (Rev. Stats., art. 4560h) the rule is changed, and grade of employment must be determined by other considerations, as order of promotion, skill or compensation.

**3.—Same—Common Purpose—Query.**

Whether a porter unloading freight at a station, and a brakeman calling out the articles for the agent to check upon the way bills were working together to a common purpose questioned but not decided.

**4.—Contributory Negligence—Charge.**

Charge upon the burden of proof on contributory negligence held not misleading as inducing the jury to consider only the evidence thereon offered by defendant.

Appeal from the District Court of Bell. Tried below before Hon. Jno. M. Furman.

J. W. Terry and A. H. Culwell, for appellant.

Puckett & Madison, A. L. Curtis, and Winbourne Pearce, for appellee.

STREETMAN, Associate Justice.—Appellee recovered a judgment for $1000 on account of personal injuries sustained in attempting to carry a half barrel of paint He was a porter at the depot at Rogers, Texas, and among other duties, he was required to carry freight from the cars of the railway company into the depot or freight house. At the time he was injured he was engaged in unloading freight from one of the cars of a local freight train.

The theory of the plaintiff, which is sustained by the evidence in the record, is that it was the duty of the brakemen upon the train to bring such freight to the door of the car and call out the character of the freight; that it was then the duty and custom of the station agent having the waybills in his hands to see whether the freight was correctly announced by the brakeman, and if so, to check it upon the waybills, but if the freight was not correctly called out by the brakeman, that it was his custom and duty to immediately correct the mistake. A half barrel of oil weighed about 150 pounds, and appellee had previously carried half barrels of oil upon his back, and could have done so without accident or injury. The brakeman on this occasion brought to the door a half barrel, and called out that it was a half barrel of oil. The station agent who had the waybills in his hand, and had the means of correcting the mistake, did not do so; and the plaintiff, believing that the barrel con-

tained oil, undertook to carry the same upon his back, but the barrel in fact contained paint, and weighed over 300 pounds. The consequence was that the barrel being too heavy, the appellee was injured in attempting to carry it on his back, and the injuries sustained by him are shown to have been in the sum found by the jury.

There are many assignments of error relating to the sufficiency of the evidence to sustain the verdict. An examination of the record convinces us that there is evidence to sustain the theory of the plaintiff, as above set out, and to justify the jury in concluding that the injury resulted from the negligence, either of the station agent, who was shown to be a vice-principal, or from the concurring negligence of said station agent and the brakeman on said train, or from the negligence of the brakeman alone. Either of these theories would, in our opinion, have been sustained by the evidence in the case. The principal questions raised by the assignments of error are those involved in the charge of the court upon the question of fellow servants, and upon the burden of proof.

With reference to the question of fellow servants, the court gave the following instructions:

"3. You are further charged that all persons engaged in the service of a railway corporation operating a railroad, who are intrusted by such corporation with the authority of superintendence, control or command of other servants or employes of such corporation or with the authority to direct any other employe in the performance of any duty of such employe, are vice-principals of such corporation, and are not fellow servants with their coemployes.

"4. All persons who are engaged in the common service of such corporation, and who while so employed are in the same grade of employment and are doing the same character of work, or service, and are working together at the same time and place and at the same piece of work and to a common purpose, are fellow servants with each other. * * *

"You are further charged that if you should find from the evidence that J. Novey was station agent for defendant at Rogers, and that by authority of defendant said J. Novey then and there had the superintendence and control of plaintiff as porter at said station, and was intrusted with the duty of directing his labor, and that plaintiff was bound to obey the orders of said Novey in the class, grade or kind of work for which he was employed, and upon which he was engaged at the time of the alleged injury, if any, then, if you so find, you are charged that said J. Novey was at such time and place a vice-principal of defendant, and if said Novey was guilty of negligence as charged at the date of the alleged injury which proximately caused the same, then the defendant would in law be guilty of negligence.

"You are further charged that if an employe is injured through the negligence of a fellow servant, as that term has been hereinbefore defined, then the master would not be liable, unless the master too was guilty of negligence proximately producing the injury. Now if you

find from the evidence that at the time and place, as charged, the plaintiff was an employe of defendant, and was then and there under the orders, direction, supervision and control of J. Novey as station agent, and that while so under the control of J. Novey and engaged in unloading a car under his direction, and in the regular discharge of the duties (for which he was employed) he attempted to carry into the freight house a certain barrel; and if you further find that said barrel was of a weight beyond the strength and ability of plaintiff to transport on his back, and if you further find said Novey knew, or by the exercise of ordinary care on his part would have known the weight thereof, and knew, or by the exercise of ordinary care would have known that in so undertaking to carry the same it would result in injury to plaintiff (if you find that it would have so resulted), and if you further find that plaintiff was ignorant of the danger of so attempting to carry said barrel, and used ordinary care in the effort to carry said barrel, and if you further find that under the direction of said Novey said plaintiff did then and there attempt to carry said barrel, but on account of the great weight thereof he was injured, as alleged, and that such injury was the direct and proximate result of negligence on the part of said J. Novey, then if you so find, you will find for plaintiff and assess his damages as hereinafter directed, unless you find for defendant under charges hereinafter directed.

"You are further charged that if said Novey was guilty of negligence, and if you should further find that E. S. Russell was a fellow servant of plaintiff, and that said Russell was also guilty of negligence which contributed to plaintiff's injury, then the fact, if it be a fact, that Russell was also negligent would not affect the defendant's liability on account of any negligence of said Novey which proximately resulted in plaintiff's injuries, if any, should you further find that plaintiff exercised ordinary care under the circumstances. * * *

"Or, if you find from the evidence that plaintiff and said E. S. Russell were fellow servants, as that term has been hereinbefore defined, at the time of the injury to plaintiff, if any, and that said Russell represented to plaintiff that said barrel was of less weight than it really was, and thereby caused plaintiff to attempt to carry the same to his injury, and if you further find that such representations of Russell amounted to negligence on his part, but that the station agent, J. Novey, was not guilty of any negligence, then you are charged that plaintiff can not recover, and if you so find, you will find for defendant.

"In order to recover in this case the plaintiff must show by a preponderance of the evidence, first, that he was injured as alleged; second, that such injuries were the direct proximate result of the negligence of J. Novey, defendant's station agent at Rogers, or by the negligence of said Russell concurred in by said Novey, and unless the evidence by a preponderance thereof establishes said facts, you will find for defendant."

At the request of the plaintiff, the court also gave the following in-

structions: "You are charged that if you believe from the evidence that the brakeman was not in the same grade of employment with the plaintiff and was not engaged in the same character of work and in the same piece of work and was not working to a common purpose, then you will find that the said brakeman was not a fellow servant of the plaintiff, and if you further find that the said brakeman, either alone, or in connection with J. Novey, was guilty of negligence that was the proximate cause of the injury, if any, sustained by the plaintiff, then you will attribute said negligence to the defendant, and unless you find from the evidence that the plaintiff was guilty of contributory ——— as herein elsewhere defined, you will find for the plaintiff."

It is not entirely clear whether the court intended to submit to the jury as an issue of fact, whether the brakeman Russell was a fellow servant of appellee, or whether it was the intention of the court to instruct them, as a matter of law, that he was a fellow servant. The last paragraph of the court's general charge above set out, requiring the plaintiff to show that his injuries were the proximate result of the negligence, either of the station agent alone, or of the concurring negligence of said station agent and the brakeman, would indicate that the trial court did regard the brakeman as a fellow servant. The other paragraphs of the charge quoted, however, submit this question to the jury as an issue of fact.

The appellant has no assignment complaining that these charges are contradictory or confusing. The complaint urged against the charge is that the court erred in submitting this question as an issue of fact to the jury, because the undisputed evidence showed that the brakeman and appellee were fellow servants.

We have reached the conclusion that if there was any error in submitting this issue to the jury, it was favorable to the appellant, for the reason that, in our opinion, the undisputed facts in the record showed that appellee and the brakeman were not fellow servants. The evidence taken as a whole establishes without contradiction that appellee was employed as a porter in the depot at Rogers; that he was under the control and direction of the station agent, and that his duties were such as would ordinarily devolve upon such an employe in attending to work around the depot, and in assisting in unloading freight from trains. The brakeman Russell was employed in a different department of the railroad; his principal duties were in connection with the running of freight trains; he was under the supervision and control of the conductor. The evidence does not show the wages that the brakeman was receiving, nor that his compensation was the same as that of appellee. Upon the whole it is clearly shown that these two employes were working in different departments; that their general duties were entirely distinct, and that they were not responsible to nor under control of the same vice-principal of the defendant.

The important question to be determined is whether under these facts they can be said to have been in the same grade of employment.

At common law they would have been held to be fellow servants, and also under the definition of fellow servants in the Acts of 1891 and 1893. These acts are as follows:

"All persons who are engaged in the common service of such railway corporations, and who, while so engaged are working together at the same time and place to a common purpose, of same grade *neither of such persons being intrusted by such corporations with any superintendence or control over their fellow employes,* are fellow servants with each other; provided that nothing herein contained shall be so construed as to make employes of such corporation in the service of such corporation fellow servants with other employes of such corporation, engaged in any other department or service of such corporation. Employes who do not come within the provisions of this section shall not be considered fellow servants." Acts 1891, p. 25, sec. 2.

"All persons who are engaged in the common service of such railway corporation, receiver, manager or person in control thereof, and who, while so employed, are in the same grade of employment and are working together at the same time and place, and to a common purpose, *neither of such persons being intrusted by such corporation, receiver, manager or person in control thereof, with any superintendence or control over their fellow employes, or with the 'authority to direct any other employe in the performance of any duty of such employe, are fellow servants with each other;* provided that nothing herein contained shall be so construed as to make employes of such corporation, receiver, manager or person in control thereof, fellow servants with other employes engaged in any other department or service of such corporation, receiver, manager or person in control thereof. Employes who do not come within the provisions of this section shall not be considered fellow servants." Acts 1893, p. 120, sec. 2.

The definitions above given were construed by our Supreme Court in the cases of Texas C. Ry. Co. v. Frazier, 90 Texas, 33, 36 S. W. Rep., 432, and Gulf C. & S. F. Ry. Co. v. Warner, 89 Texas, 475, 35 S. W. Rep., 364; and the effect of these decisions is that the requisites necessary to constitute employes fellow servants, as prescribed in each of the acts, are limited by the clauses in italics.

In the case of Railway Co. v. Warner, Judge Denman says: "In the absence of a statutory test, the grade would have depended upon the test which might have been adopted by the courts, such as authority one over the other, order of promotion, skill in the service, compensation received, etc. We are of the opinion that the Legislature anticipated and settled this difficulty in the construction of the word 'grade,' by the use of the clause 'neither of such persons being intrusted,' etc., 'with any superintendence or control over their fellow employes,' etc., as explanatory of what was meant by the clause 'in the same grade.'" And because of this limitation, which occurs in each of the definitions above set out, it was held that employes who were engaged in the common service, etc., and were not shown to have been intrusted with any

superintendence or control over their fellow employes, were fellow servants. In the case mentioned, an engineer and a switchman were held to be fellow servants.

In Railway Co. v. Frazier, 90 Texas, 33, 36 S. W. Rep., 432, a brakeman and engineer were held to be fellow servants.

After these decisions, in 1897, the acts in question were amended and the definition there given is as follows:

"Art. 4560h. Who are fellow servants: All persons who are engaged in the common service of such person, receiver or corporation, controlling or operating a railroad or street railway, and who while so employed are in the same grade of employment, and are doing the same character of work or service, and are working together at the same time and place and at the same piece of work and to a common purpose, are fellow servants with each other. Employes who do not come within the provisions of this article shall not be considered fellow servants."

It will be noted that one of the principal changes effected by this amendment was the omission of the clauses in the previous legislation which were held to constitute a limitation upon the words "grade of employment."

In view of the previous legislation and the decisions thereunder, it seems to us that the purpose of the Legislature was to get rid of the construction which had been placed upon these statutes in the cases above cited, and to broaden the definition of a fellow servant. It therefore becomes our duty to construe the language used in this Act of 1897, and to determine whether the appellee and the brakeman Russell were shown to be in the same grade of employment; and, to our minds, the evidence was entirely insufficient to establish this fact. As said by Judge Denman: "In the absence of a statutory test, the court might have adopted as a test the authority of one over the other, the order of promotion, skill in the service, compensation received, etc." By the amendments to which we have referred, we think it was clearly the purpose of the Legislature that the authority of one over another was not to be the test; and if that be true, then none of the other conditions were shown to exist in this case which would constitute these employes in the same grade of employment. The evidence does not show that their compensation was the same; the evidence does not show that their right to promotion was the same. It does affirmatively show that their principal duties were entirely different, and that they were employed in entirely different departments of the railway service.

We therefore conclude that in the absence of the limitation placed upon the words under the former legislation and decisions of our Supreme Court, we must hold that these parties were not shown to have been in the same grade of employment.

It is further insisted by appellee that the evidence shows that they were not "working together at the same time and place and at the same piece of work and to a common purpose;" it being contended that while they were engaged in the general task of unloading this freight, that the

brakeman's duty concerning it had ceased when he brought it to the door and called out the character of the freight, and that at that time the duty of appellee had just begun. In view of our conclusion upon the question above discussed, however, it is unnecessary to express any opinion upon this question.

Having reached the conclusion that the evidence wholly failed to show that the brakeman and appellee were fellow servants, it follows that the court would have been authorized in instructing the jury peremptorily to this effect; and if the charge of the court is to be construed as submitting this as an issue of fact to the jury, it is in that respect only a more favorable instruction than appellant was entitled to.

With reference to the burden of proof, the court gave the following instructions: "The burden is upon the servant to show negligence on the part of the master and due care on his own. * * * You are further charged that where the plaintiff seeks to recover damages on account of the alleged negligence of the defendant, it devolved upon him to establish the facts upon which he relies by a preponderance of the evidence; and where the defendant relies upon contributory negligence upon the part of the plaintiff to defeat the action, it devolves upon him to establish the same by like preponderance of the evidence in the case."

These two paragraphs occur in different portions of the court's charge, and it may be that they are conflicting, but there is no assignment of error complaining of the charge in that respect. The only complaint made is of the last section above set out, for the reason that the charge was calculated to and possibly did lead the jury to believe that they were not to consider the evidence offered by the plaintiff in determining the issue of contributory negligence.

Notwithstanding the admission in the brief of appellee that this probably constitutes reversible error, we do not believe that the case should be reversed for this reason. The charge, in our opinion, comes within the rule announced by the Supreme Court in the case of Gulf C. & S. F. Ry. Co. v. Howard, 7 Texas Ct. Rep., 574. Answering a question certified by this court in that case, the Supreme Court says: "The charge of the court on the burden of proof of contributory negligence, when taken in connection with the charge set out in this certificate, was not calculated to mislead the jury. The fourth clause of the charge given by the court embraced two acts alleged by defendant to have been negligently done by the deceased that contributed proximately to his death. The court charged the jury that if they found from a preponderance of the evidence that either of said acts had been done by the deceased, and that he was guilty of negligence as defined in the charge, then they would find for the defendant. To obey this charge in determining the question of contributory negligence, the jury must necessarily have considered all of the testimony introduced upon the subject of contributory negligence by both the plaintiffs and defendant, for in

no other way could the preponderance of the testimony upon that issue be determined."

In this case the jury are simply told that it devolves upon the defendant to establish contributory negligence by a "preponderance of the evidence in the case." Not only are they to look to the preponderance of the evidence which, as stated by the Supreme Court in the case above cited, would necessarily involve a consideration of all the evidence, but they are told that this must be a preponderance of the evidence "in the case." And we think it clear from this that the jury would not infer that they would only look to the evidence of the defendant upon that issue.

Appellee has filed a cross-assignment of error, complaining of the insufficiency of the amount awarded by the verdict. We are unable to say from the evidence that the amount awarded was not full compensation for the injuries sustained.

The other assignments have been carefully considered, and while we do not deem it necessary to discuss them, we have found no reversible error in the record. The judgment is therefore affirmed.

*Affirmed.*

### OPINION ON REHEARING.

STREETMAN, Associate Justice.—In appellant's motion for rehearing it is insisted that the finding of this court in the original opinion that appellee and the brakeman Russell were not fellow servants, and the statements made in the opinion in reference to the facts upon said issue are not supported by the evidence, and we are requested to file additional findings of fact with reference to said issue.

We have carefully re-examined the evidence in the record bearing upon this question, and are satisfied that the statements in the original opinion are supported by the evidence in the record. In order, however, that appellant may have the benefit of the testimony as it is shown in the record, we find that upon this issue the witnesses testified as follows. Appellee testified:

"My duties in my employment at Rogers were to check baggage, unload baggage, etc., and unload freight from the cars and assist around in nearly everything Mr. Novey, the agent, told me to do. Mr. Novey is the station agent at Rogers, and I worked under his direction and control, and he had general direction and control of nearly everything I did there. I was the only assistance there besides himself." He further testified: "It was the duty of the brakeman when a car was to be unloaded to bring freight up to the car door; that is, he takes it from its position in the car to the door, and it is my duty to take it the rest of the way or to the freight house. We were both engaged in unloading freight. It is one continuous act from the time he gets hold of it until I set it over on the depot platform. It takes all that to be done before the freight is unloaded. The brakeman was performing his regular duties in setting the freight up to the car door. He was employed to do that. There was nothing new or strange about

it. I was employed, too, and it was a part of my regular duties to take the freight from the car door over the depot platform. * * * After the brakeman would bring a piece of freight up to the car door, and call out what it was for, he would have nothing more to do with it. He did not help me to carry the freight from the car door to the freight house. That was my work. That is, my work began where his ceased."

J. Novey, the station agent, testified: "Elmore and I were good friends, and he was working under me there as porter."

The brakeman, Russell, testified as follows: "It was Mr. Novey's business to stand there and check the freight, and that is what he was doing at the time, as usual. He would check the freight out as I brought it to the door, and as Elmore carried it in. My position was that of brakeman at that time. Mr. Novey was station agent and Elmore was porter there at the depot. I suppose I might be considered as working in one department and him in the other. I was working under the conductor of the train, and I suppose Mr. Elmore was working under Mr. Novey at the station. The car that we were unloading out of was standing on the main line. We left one car there and unloaded some freight out of it before we left."

Redirect examination: "Mr. Novey could direct me what to do while we were unloading that freight and how to do that, but when we are out on a run I am under the conductor. The conductor of the train did not have anything to do with the unloading of that freight. He was not there at that time. We got to Rogers that morning about 10 o'clock and left about 11 o'clock, as well as I can remember. While we were unloading this freight, both myself and Mr. Elmore were temporarily working under Mr. Novey's direction."

The motion for rehearing is overruled.

*Motion overruled.*

Opinion filed March 30, 1904.