## HOUSTON & T. C. R. CO. v. GRAY.

(Court of Civil Appeals of Texas. Austin.
April 5, 1911. Rehearing Denied
May 17, 1911.)

1. NEW TRIAL (§ 44*)—GROUNDS — MISCON-
DUCT OF JUROR — GIVING JUROR INTOXI-
CANTS.

M., who was at the place of trial in the
interest of his brother, who was to be tried for
murder at the same term, gave a juror a drink
of whisky which he brought with him, in the
presence of H., who was in the employ of
plaintiff's attorneys to investigate evidence in
personal injury actions. M. was a friend of
H., but had never seen plaintiff until he as-
sisted in carrying him into the courtroom.
Plaintiff's attorneys were not acquainted at the
place of trial, and M. told them, when they
were inspecting the jury list, that such juror
was a good man. On account of the crowded
condition of the hotel, M. and H. roomed to-
gether, and M. put a bottle of whisky in H.'s
grip, and asked the juror to take a drink with
him in a vacant building; H. not drinking and
nothing being said about the case, H. not know-
ing at the time that the juror was on the jury.
Held, that the giving of the drink to the juror
was not ground for a new trial, M. not having
acted in plaintiff's interest, but apparently in
the interest of his brother.

[Ed. Note.—For other cases, see New Trial,
Cent. Dig. §§ 80-85; Dec. Dig. § 44.*]

2. NEW TRIAL (§ 44*) — GROUNDS — MISCON-
DUCT OF JUROR—DISCRETION OF COURT.

The refusal of a new trial because of the
misconduct of the juror was within the trial
court's discretion under Laws 1905, c. 18,
amending Rev. St. 1895, art. 1371, providing
that, if misconduct of a juror be material, a
new trial may be granted in the court's discre-
tion; the court's finding on an issue of fact in
such case being entitled to the same weight as
a jury finding.

[Ed. Note.—For other cases, see New Trial,
Cent. Dig. §§ 80-85; Dec. Dig. § 44.*]

3. NEW TRIAL (§ 140*) — GROUNDS—MISCON-
DUCT OF JUROR—BURDEN OF PROOF.

Notwithstanding Laws 1905, c. 18, amend-
ing Rev. St. 1895, art. 1371, providing that, if
the misconduct of a juror be material, a new
trial may be granted in the court's discretion,
where improper conduct is shown, the offending
party has the burden of showing, to the court's
satisfaction, that the juror was not influenced
thereby.

[Ed. Note.—For other cases, see New Trial,
Cent. Dig. §§ 284-306; Dec. Dig. § 140.*]

4. NEW TRIAL (§ 44*) — GROUNDS—MISCON-
DUCT OF JUROR.

That a juror stated during the jury's de-
liberation that he favored the award of $50.000
damages in a personal injury action because
plaintiff's attorneys would get one-half of the
amount recovered was not such misconduct as
to require a new trial; the statement being
merely an expression of opinion, and not a
statement of fact purporting to be within his
knowledge.

[Ed. Note.—For other cases, see New Trial,
Cent. Dig. §§ 80-85; Dec. Dig. § 44.*]

5. APPEAL AND ERROR (§ 1066*)—HARMLESS
ERROR — INSTRUCTIONS — UNNECESSARY IN-
STRUCTIONS.

Defendant in a personal injury action can-
not complain on appeal of error in a charge on
contributory negligence, where the evidence did
not require such charge.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

6. DAMAGES (§ 46*) — PERSONAL INJURIES—
MEDICAL EXPENSES.

That plaintiff's physician looked to his
brother-in-law for pay for his services would
not prevent an award of reasonable medical ex-
penses in a personal injury action.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 99, 251; Dec. Dig. § 46.*]

7. APPEAL AND ERROR (§ 216*)—PRESERVA-
TION OF GROUNDS—REQUEST FOR INSTRUC-
TION—NECESSITY.

Where an instruction in an employé's per-
sonal injury action authorizing the jury to con-
sider reasonable medical expenses incurred for
medical services correctly stated the law so far
as it went, defendant cannot object thereto on
appeal on the ground that there was no evi-
dence as to the amount of the charges of some
of plaintiff's physicians, where it did not re-
quest a further charge qualifying the instruc-
tion given.

[Ed. Note.—For other cases, see Appeal and
Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§
627-641.]

8. WITNESSES (§ 248*) — QUESTIONS AN-
SWERED.

In a freight brakeman's action for person-
al injuries by other cars being backed into a
caboose in which he was sleeping, knocking him
out of the caboose, a witness was asked what,
if anything, the switching crew should have
done before running onto the caboose track and
what was the custom in that respect, and, up-
on objection and before an answer was made,
witness was asked, "What was usually done?"
which was not objected to, and witness answer-
ed, "You have got to inspect the brake. A
man never cuts off a car unless he inspects the
brake. If he does, he does not do his duty."
Held, that the first question asked was not
answered.

[Ed. Note.—For other cases, see Witnesses,
Cent. Dig. §§ 861-863; Dec. Dig. § 248.*]

9. MASTER AND SERVANT (§ 270*)—INJURIES—
ADMISSION OF EVIDENCE—NEGLIGENCE.

In a freight brakeman's action for person-
al injuries by cars being switched against a
caboose in which he was sleeping knocking him
out of the caboose, evidence as to the custom
as to what switching crews usually do before
switching cars was admissible on the issue of
negligence.

[Ed. Note.—For other cases, see Master and
Servant, Dec. Dig. § 270.*]

10. APPEAL AND ERROR (§ 237*)—PRESERVA-
TION OF GROUNDS — RECEPTION OF EVI-
DENCE—PART INADMISSIBLE.

If a part of an answer to a question was
objectionable, the objecting party cannot assign
error thereon, unless he moves to exclude such
part.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1386-1388; Dec. Dig. §
237;* Trial, Cent. Dig. §§ 228-252.]

11. DAMAGES (§ 130*)—EXCESSIVE DAMAGES—
PERSONAL INJURIES.

A verdict for $30,000 in a railroad brake-
man's action for personal injuries held sustain-
ed by evidence.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 357-367; Dec. Dig. § 130.*]

Appeal from District Court, Robertson
County; J. C. Scott, Judge.

Action by William H. Gray against the
Houston & Texas Central Railroad Company.
From a judgment for plaintiff, defendant ap-
peals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Hudson & Wilson, Kinard & Goodman, O. L. Stribling, and Baker, Botts, Parker & Garwood, for appellant. John Lovejoy, Presley K. Ewing, and Scott Field, for appellee.

JENKINS, J. This suit was instituted by appellee to recover damages alleged to have been sustained by him through the negligence of appellant at Hearne, Tex., on October 8, 1908; the gravamen of the complaint being that while he was, with appellant's permission, sleeping in a caboose provided by it for that use, and standing on the caboose track at night, the appellant's employés, not working with appellee, but being members of a different crew, negligently ran another caboose in on said track, by reason of which the injuries complained of were inflicted. Appellant's defenses, so far as relied on, were general denial, assumed risk, and contributory negligence, in that appellee failed to be operated on for double hernia produced by the collision, and that he "walked out of said caboose No. 9 in which he was sleeping, and stepped off of the platform of said caboose onto the ground, and in so doing suffered whatever injuries he sustained at the time." Appellee, in reply, denied that he stepped off of the platform, and alleged that, if such was the fact, appellant's negligence "caused plaintiff to be surrounded at the time by such circumstances as appeared to him to threaten the destruction of his life, or serious injury to his person, so that, if he acted as alleged by defendant, he did so as the result of fright or want of presence of mind occasioned by circumstances of excitement, confusion, and danger brought about by the negligent acts and conduct of defendant, as alleged by plaintiff against it." The jury returned a verdict in favor of appellee for $30,000, and judgment was entered for that amount, from which judgment appeal has been perfected.

### Findings of Fact.

At the time of the injury, appellee was employed by appellant as a brakeman at $100 per month. He was 28 years old, strong and in good health. He had arrived at Hearne, the end of his run, and had gone to sleep in a bunk in caboose No. 9, standing on the caboose track. Trainmen were permitted, but not required, to sleep in cabooses. It was known to appellant's employés who switched the caboose in, that it was customary for trainmen to sleep in cabooses. Caboose No. 1 was a few feet in the rear of No. 9, and a car loaded with lumber was a few feet in front. At about 4 o'clock a. m. a freight train arrived, and its caboose No. 24 was "kicked" in on the caboose track on a downgrade some 200 or 300 feet from the standing cabooses. A brakeman was on No. 24, but neither of the brakes would work, and it ran with great violence against No. 1, which, in turn, struck No. 9 and shoved it with great violence against the car of lumber. A number of the crew were thrown out of their bunks. Appellee was thrown from his bunk which was near the door next to the lumber car by the first impact, and was hurled through said door by the rebound occasioned by striking the lumber car, and fell to the ground. He was able to and did come back into the caboose. His face was bruised and bleeding, and he had great difficulty in breathing. He was taken to his home at Ennis, and walked to a buggy, and was driven home. He was treated at Ennis by appellant's local surgeon for several weeks, when he was taken to appellant's hospital at Houston, where he remained for six weeks. He then went to the Baptist Sanitarium at Houston, where he remained for a month and a half, after which his wife rented a private house in Houston, to which she took him, and where he remained up to the time of the trial. From the time he went to the Baptist Sanitarium up to and including the time of the trial he was attended by Dr. Wagner. He was confined to his bed from the time of his injury to the time of this trial, a period of about 15 months.

There is practically no contradiction in the evidence as to the facts above stated. There is also no contradiction in the evidence as to the appellee's being paralyzed in his lower limbs from the time of his arrival in Houston up to and including the time of the trial. "The doctors disagree" as to the nature of this paralysis. This will be discussed under an assignment raising this issue.

During the progress of the trial one Frank Myatt gave W. D. Luker, one of the jurors, a drink of whisky in the presence of one Frank Hammond. Hammond was employed by Lovejoy & Ewing, attorneys for appellee, upon a monthly salary, to assist them in personal injury suits, his duties being similar to those of a claim agent for a railway company in investigating the evidence. Myatt never saw appellee until the day he was brought to Franklin to attend the trial of this case, but he was a friend of Hammond's; they having been schoolmates. Myatt had come to Franklin in the interest of his brother, who was charged with murder, and whose trial was expected to be had at a subsequent day of that term. Franklin was a local option town, and Myatt had brought whisky with him. He assisted Hammond and others in carrying appellee to the courtroom on a cot, appellee being paralyzed and unable to walk or sit up. When appellee's attorneys were looking over the jury list, Myatt told them that Luker was a good man. Appellee's attorneys were not acquainted at Franklin. Myatt had known Luker for 25 years. The hotel being crowded, Hammond consented at the landlord's request for Myatt to room with him. Myatt put a bottle of whisky in Hammond's hand grip, and invited Luker to go with him into a vacant store and take a drink. Hammond was in the store at the time, having gone in there

to urinate. Myatt was unable to open the valise, and Hammond, being requested to do so, opened it for him. Luker and Myatt each took a drink, but Hammond did not. Nothing was said about the case. Hammond did not know at the time that Luker was on the jury, but subsequently, seeing him on the jury, informed appellee's attorney of the occurrence.

### Conclusions of Law.

1. Appellant set up in its motion for new trial the alleged misconduct of the juror Luker in taking a drink of whisky. The court heard the testimony on this issue, and overruled said motion. In addition to the facts above set out, Luker testified that he was not in any manner influenced by such action. The testimony further showed that, when the jury retired, they first voted as to whether appellee's injuries were real or simulated. All voted that they were real. They next voted as to the liability of appellant, and all voted that appellant was liable. They next voted as to the amount that should be allowed appellee. Eight voted for $50,000, two for $30,000. One M. W. Maris for $25,-000 and Luker for $5,000. He, however, confided to Maris that he thought $30,000 was the right amount, and that he had voted for $5,000 to bait the jurors whom he thought were too high on amount.

[1] Though we do not indorse the idea which seems to some extent to prevail, that everybody connected with the trial of a case may be honest and fairly intelligent except the jurors, we are thoroughly in accord with the proposition that courts should be very careful to prevent undue influence being exercised upon the jury, especially in the matter of giving them intoxicating liquor, the demoralizing effect of which is too well known to call for comment from us. We do not think, however, that any case can be found which goes to the extent contended for by appellant, and, if so, we are not willing to follow it. What differentiates this case from cases cited by appellant is that Myatt was not a party to this suit, had no interest in it, and was not the agent or even an acquaintance of the appellee. What he did in assisting his friend Hammond in carrying appellee was no more than any humane bystander would have done. We apprehend that what Myatt did was not in the interest of appellee, but in the interest of his brother, who was to be tried for murder. A party should not be deprived of a verdict, if fairly won, because some one not in his interest should give a juror a drink of whisky, which did not influence his verdict.

[2] We overrule the assignment of error as to this matter for another reason. Under Act 1905, c. 18, amending article 1371, R. S. 1895, a new trial in such cases is confided to the discretion of the court. In Larson v. Levy, 57 S. W. 54, it was said that the law would not permit proof that the juror was not influenced. Under the above act, such proof is clearly admissible. It is true that this is a judicial discretion and subject to review, but the finding of a court on an issue of fact is entitled to the same weight as that of a jury. Baldridge v. Scott, 48 Tex. 192; Gilliard v. Chessney, 13 Tex. 337; Ry. Co. v. Swann, 127 S. W. 1164.

[3] We have no doubt that trial courts will continue to follow the rule heretofore laid down, that, where improper conduct is shown, the burden rests upon the offending party to show to the satisfaction of the court that the juror was not influenced thereby.

[4] We do not think there is any merit in the contention as to the alleged misconduct of the juror Bishop. It appears that he was for $50,000 damages upon the ground that appellee's attorneys would get one-half of what was recovered. This must be regarded merely as an expression of opinion on his part, and not as statement of a fact purporting to be within his knowledge.

2. The issue of contributory negligence was decided by the jury against appellant's contention, and the evidence supports the finding. The limitation in the court's charge as to the negligence of appellee in jumping from the car, if he did so, was proper under the pleadings and the evidence.

[5] But, in addition to this, appellant has no ground of complaint, for the reason that the evidence did not demand any charge on that issue. Railway Co. v. Elmore, 35 Tex. Civ. App. 56, 79 S. W. 891.

[6] 3. Appellant assigns error on the charge of the court authorizing the jury to consider reasonable expenses incurred for medical attention, because the evidence shows that Dr. Wagner looked to appellee's brother-in-law for his pay. This would make no difference if it was true. Railway Co. v. Gerald, 128 S. W. 170. But appellee's wife testified that she employed Dr. Wagner for appellee, and that her brother was security for the fee. Also because the evidence showed that other physicians had attended appellee, and there was no evidence as to their charges. We do not think the evidence shows that any other physician had or will make any charges.

[7] At any rate, the court's charge is a correct statement of the law as far as it goes, and, if appellant desired any further charge on this issue, it should have requested the same. Railway Co. v. Motwiller, 101 Tex. 521, 522, 109 S. W. 918; Cockrill v. Cox, 65 Tex. 675; Mfg. Co. v. Femelat, 35 Tex. Civ. App. 36, 79 S. W. 872; Railway Co. v. Brock, 35 Tex. Civ. App. 155, 80 S. W. 425.

[8] 4. We overrule appellant's assignment as to the testimony of the witness Boren. Appellee asked said witness, "What, if anything, ought the night switch crew to have done before running down that caboose down on the caboose track, as done, what was the custom or habit of the business in that regard—what would they do in the custom or

habit of the business?" Upon objection being made and before any answer was given, appellee asked, "What was usually done?" No objection was made to this question, and the answer was, "Why, you have got to inspect the brake. A man never does cut off a car unless he inspects the brake. I know that of my own knowledge for seven or eight years. A man never does it. If he does, he does not do his duty." Appellant's proposition is that the question, "What if anything ought the crew to have done before running the caboose, as done, onto the caboose track," calls for the opinion of the witness on a mixed question of law and fact.

[9] This was not the question which was answered. It was competent to prove the custom as bearing on the issue of negligence. Railway Co. v. Hays, 40 Tex. Civ. App. 162, 89 S. W. 33; Railway Co. v. Harriett, 80 Tex. 81, 15 S. W. 556; Railway Co. v. Reed, 88 Tex. 449, 31 S. W. 1058; Lipscomb v. Railway Co., 95 Tex. 21, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804; Barnes v. Zettlemayer, 25 Tex. Civ. App. 468, 62 S. W. 111.

[10] If any part of the answer was objectionable, appellant should have moved to exclude it.

[11] 5. Appellant earnestly insists that the judgment is excessive, in that the injuries of appellee are not sufficiently serious to justify the verdict of the jury. The testimony of appellee, of his physician, Dr. Wagner, and of Dr. Eckhart, who examined him first at the instance of a mutual insurance order, and also a few days before the trial to qualify himself as an expert in the case, shows that appellee is suffering from a double hernia, which might be cured by an operation, if he was in condition for such an operation to be performed; but that he has never been in condition since he was injured to undergo such operation, and probably never will be; that when thrown from the caboose he was severely cut about the head and bruised about the shoulders and back, affecting his back, bowels, bladder, and lungs; that he will never be able to sit up, and that he frequently suffers paroxysms of pain; that he is totally paralyzed from the hips down, and has neither power of motion nor feeling in that portion of his body; that his paralysis is caused by injury to the spinal cord, and the nerves of the same, and that he will never recover; that he is liable to live the usual span of life in this condition, and "cannot be promised even the consolation of death." If these things be true, the verdict is not excessive.

On the other hand, Dr. Red, appellant's surgeon, and Dr. Armstrong, who examined appellee at appellant's request, say that appellee's paralysis is not real paralysis, but that he is suffering from traumatic hysteria. They explain that they do not mean by this that he is malingering, but that he is para-

lyzed because he thinks that he is paralyzed, and that if he would cease so to think he would get well. Dr. Red said: "My judgment is that he has an actual case of hysterical paralysis, and that simulating is not done in his case." They applied hot spoons and stuck pins in him. But, though they rely upon Charcot as authority, they do not appear to have applied the hypnotic test, nor to have tried suggestive therapeutics as practiced by that eminent scientist, and by the school at Nancy, and by Screnck-Notzing and other eminent phsyco-therapeutists. Dr. Armstrong said: "In Mr. Gray's case there is no injury to either the cord or the nerve leading from the cord, but only the mental view that the limbs are dead, and therefore that he cannot use them. * * * He cannot walk because he believes in his mind that he cannot." It may be true that "there are more things in heaven and earth, Horatio, than are dreamed of in our philosophy," though the dreams of philosophy seem to have been pretty comprehensive. It may also be true that science "knows so many things that are not so." If the jury were compelled to pass upon these conflicting theories, they were as competent to do so as we are, or perhaps as any one else is, in the present state of science; but it was not absolutely necessary that they should have done so. The law aims to be practical. There is no pretense that appellee has voluntarily brought about the state of mind which appellant's physicians say has resulted in his present condition, nor that he can voluntarily change his mental attitude in this respect. They say that his paralysis is the result of traumatic hysteria, occasioned by the injuries which he is shown to have received by reason of the negligence of appellant. Dr. Armstrong says: "It is as real to the patient, as long as it lasts, as paralysis resulting from organic trouble." How long will it last? Dr. Armstrong said: "I cannot tell this jury whether that man will ever be able to get off of his bed." Dr. Red said: "It might be that his hysterical paralysis may be permanent." If so, this clash of scientific theories is a matter of no practical importance to the appellee. Paraphrasing the language of the blind man who was healed, he might well say: "Whether my trouble is organic or functional, I know not. Only this I know, that whereas I was strong and healthy, now I am a wreck, unable to provide for myself or family, and suffer great physical agony." If the trouble is purely mental, the question might well be asked the eminent physicians who testified for appellant: "Canst thou minister to a mind diseased?" Their practical answer is that they cannot, for Dr. Red, at least, had appellee under his charge for six weeks in appellant's hospital, with no indications of improvement. Dr. Armstrong does not suggest any remedy, except that the payment of such a sum of money as

to relieve his mind of worry for the welfare of his family, might lead to his recovery. If this be true, the jury have given this prescription, and, as the appellant caused the sickness, it would seem but fair that it should furnish the medicine. At any rate, the evidence in behalf of appellee is amply sufficient to sustain the verdict, and we do not feel justified in setting aside their verdict, however persuasive the evidence on the other side may be.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.