GALVESTON, H. & H. R. CO. v. HODNETT.

(Court of Civil Appeals of Texas. El Paso. Feb. 27, 1913. On Rehearing, March 19, 1913. Rehearing Denied April 10, 1913.)

1. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS COVERED.

A requested instruction covered by the main charge is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

2. TRIAL (§ 260*)—INSTRUCTIONS—REPETITION.

A requested instruction which is an undue repetition in respect to the burden of proof is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. MASTER AND SERVANT (§ 204*)—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER.

Under Assumed Risk Act April 24, 1905 (Acts. 29th Leg. c. 163), continuation in the service with both knowledge of the defect and danger is essential to charge a servant with the risk.

[Ed. Note.—For other cases. see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

4. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER.

A servant engaged in throwing rails off a flat car will not be deemed to have knowledge of the danger from a defective drawhead because he has knowledge that it is defective.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

5. DAMAGES (§ 191*) — MEDICINES — REASONABLE VALUE.

In a personal injury action, where the only evidence of the value of medicines used was the testimony of plaintiff that he paid a lump sum for the medicine, there can be no recovery therefor; it not appearing that the charge was reasonable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 504, 510; Dec. Dig. § 191.*]

6. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION.

A charge must be construed as a whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

7. DAMAGES (§ 158*)—PERSONAL INJURY—PREEXISTING DISEASE—PLEADING.

In a personal injury action in which the petition alleged that plaintiff was a healthy man, the general issue put in issue such fact, and hence damages caused by the additional injury by reason of a diseased condition existing at the time of the accident are recoverable, though not expressly pleaded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 441–444; Dec. Dig. § 158.*]

8. APPEAL AND ERROR (§ 732*)—ASSIGNMENTS OF ERROR—MOTION FOR NEW TRIAL.

An assignment of error that the court erred in overruling a motion for new trial because the verdict was clearly excessive is too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3022–3024; Dec. Dig. § 732.*]

On Rehearing.

9. APPEAL AND ERROR (§ 1140*)—REVERSAL—REMITTITUR.

Where, in a personal injury action, recovery for medicines is erroneously allowed, a remittitur of the amount recovered cures the error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4476; Dec. Dig. § 1140.*]

10. MASTER AND SERVANT (§ 204*)—ASSUMPTION OF RISK—STATUTES—BAR TO RECOVERY.

Assumed Risk Act April 24, 1905 (Acts 29th Leg. c. 163), providing that assumed risk is no defense when a person of ordinary prudence would have continued in the service with knowledge of the defect and danger, merges assumed risk arising from the knowledge of the defect and danger into a question of contributory negligence, and hence in view of Employers' Liability Act (Acts 31st Leg. [1st Ex. Sess.] c. 10; Rev. Civ. St. 1911, art. 6649) providing that contributory negligence does not bar recovery, but the damages are to be reduced in proportion to the negligence, assumption of risk arising from the knowledge does not bar a recovery, but is available only in mitigation of damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**11. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.**

In an action for injuries to a servant, where assumption of risk arising from the knowledge of the defect is not a bar to recovery, and should not have been submitted as a bar, any error in an erroneous limitation on the doctrine is harmless as to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

McKenzie, J., dissenting.

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by W. J. Hodnett against the Galveston, Houston & Henderson Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant. John Lovejoy and Presley K. Ewing, both of Houston, for appellee.

HIGGINS, J. Suit for damages account personal injuries, resulting in verdict and judgment for $8,000.

It was averred by plaintiff that he was employed by defendant as a section foreman, and on August 19, 1910, he and his crew of men were engaged in unloading rails from a flat car, distributing same about every 30 feet alongside the track, the flat car being at the east end of a train consisting of an engine and two intervening box cars; that the engineman would move the train eastward about 30 feet, when two rails would be thrown off, the train movement being made upon signals to start or stop given by a switchman. After about 25 stops had been made, and while plaintiff was standing about two feet from the east end of the car, with his face toward the engine, and while reaching down for a pick, the car came to a sudden and abrupt stop, with a bump and a jerk, unawares and without notice to plaintiff, throwing him over, the rebound pulling the car from under him, and one of his men upon the car was thrown against him by the bump and jerk, precipitating both to the ground, and as a result of the fall the injuries complained of were inflicted; that the same were proximately caused by the defendant's negligence "(1) in failing to use ordinary care to maintain the drawheads of the box car next said flat car in a reasonably safe condition, on account of which failure, when the air was applied, said appliances allowed an unusual or unnecessary play or slack of many inches, which was a proximate cause of aforesaid sudden and abrupt stop of said flat car (which was unusual and unnecessary) and the consequent bump and jerk-back, as aforedescribed; (2) in failing by its agent and servant in charge of said engine, to wit, the engineman, who was acting for it in that behalf within the scope of his authority, to exer-cise ordinary care in the handling of said engine and train, and said flat car attached thereto, to prevent said flat car on which plaintiff was working from coming to an unnecessarily sudden and abrupt stop, as it did, and the consequent bump and jerk-back as aforedescribed." In addition to a general denial, defendant's answer in substance alleged that the accident was not due to any negligence upon the part of defendant in the particulars alleged, but to the fact that plaintiff was standing too near the end of his car, lost his balance when it stopped, thereby falling off, due to his failure to exercise any care to prevent falling; contributory negligence in failing to assume a safe position upon the car, away from the extreme end, when he knew the car was about to stop; and further pleaded that plaintiff assumed the risk incident to any defect in the drawhead.

[1, 2] Defendant requested a special charge, which reads as follows: "You are charged that the burden of proof is on the plaintiff to show by a preponderance of the evidence that he was caused to fall from the car by negligence on the part of the defendant. If you believe from the evidence that the plaintiff fell because he was standing too near the end of the car when it stopped, and because he lost his balance and was not caused to fall on account of any negligence on the part of the defendant, you will return your verdict for the defendant." This charge was properly refused because in respect to the issue of whether or not plaintiff's fall was due to the fact that he was standing too near the end of the car when it stopped and lost his balance the same was properly submitted in the main charge; furthermore, to have given same would have been an undue repetition in respect to the burden of proof. Since it was not proper to give the charge in its requested form because of this undue repetition, it was properly refused. Railway Co. v. Minter, 42 Tex. Civ. App. 235, 93 S. W. 516. It is insisted that, while it may have been objectionable in the particular noted, yet undue repetition alone does not condemn a charge, and it is only when the repetition is calculated to mislead that it becomes objectionable. This may be true in the sense that it is only in the latter event to give such a charge is reversible error, but charges should avoid undue repetitions, whether calculated to mislead or not.

[3] Error is assigned to a paragraph of the court's charge as follows: "If you do not find from the evidence that the plaintiff knew, or must necessarily have known in the ordinary discharge of his own duties, that such defect, if any, was in the drawheads or drawhead in question, or if you believe from the evidence that a person

of ordinary care in plaintiff's situation would have continued in the service with knowledge of such defect, if any, then plaintiff will not be deemed in law to have assumed the risk of such defect, if any." Knowledge of both defect and danger, now as previous to adoption of the Assumed Risk Act of 1905, are essential elements of the doctrine of assumed risk, and under the act noted a determination of the question is controlled, not by a consideration of whether a person of ordinary care would have continued in the service with knowledge of the defect only, but whether such person would have continued in the service with knowledge of the defect and danger, and it is not the law, as charged in this paragraph, that plaintiff did not assume the risk of the condition stated, if a person of ordinary care, in his situation, would have continued in the service, with knowledge of the defect merely, and the charge quoted was more onerous on the defendant than the law permits. Knowledge of a defect does not in all instances necessarily imply a knowledge of the danger incident thereto. Poindexter v. Receivers, 101 Tex. 322, 107 S. W. 42; Railway Co. v. Smith, 24 Tex. Civ. App. 127, 57 S. W. 999; Railway Co. v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264. And a person of ordinary care might continue in the service when he had knowledge of the defect but not of the danger, whereas he would not do so if he had knowledge of the danger as well.

Discussing the principle that assumption of risk is not predicable from knowledge of defective condition alone, Mr. Labatt, on Master and Servant at section 279b, says: "The practical importance of the principle stated in the last section is considerably diminished by a fact which is sufficiently obvious, viz., that circumstances which would justify a jury in finding that a servant, although aware of the abnormal conditions, did not comprehend the risks resulting therefrom, are of much more rare occurrence than circumstances in which his comprehension of the risks is an unavoidable inference as soon as it is established that he knew of the abnormal conditions. In the majority of instances, therefore, it will be found that the courts treat the servant's assumption of the risk as an immediate consequence of his knowledge of the conditions of which that risk was an incident. The rationale of these decisions is not that proof of the servant's comprehension of the risk is unnecessary, but simply that, upon the facts in evidence, any person of average intelligence who was aware of the conditions must either have understood, or have been chargeable with negligence in not understanding, the hazards to which these conditions exposed him. *But, although one step of the deductive process is thus taken without the aid of any specific*

*testimony, there is a manifest impropriety in giving an abstract statement of the rule as to assumption of risk in terms which ignore the circumstance that this step must be accounted for."*

The italicized portion of the quotation aptly states the vice in the charge under consideration, since the effect thereof is to imply that one of the necessary deductive steps may be ignored. It also illustrates the vice in appellee's contention that the charge quoted is not subject to objection because instead of following a literal abstraction the same fits itself to the precise case, since the issue of risk is determinable upon basis of the defect alone, when knowledge thereof necessarily implies a knowledge of the danger. Both the charge and appellee's contention ignore a vital step in the deductive process.

[4] Neither can we concur in the further contention of appellee that it was undisputed, and necessarily assumed by both sides upon trial, that plaintiff's knowledge of the defective drawhead would necessarily impute knowledge of the danger. To a railroad man, experienced in the train service, it might be imputable, but not to a man whose experience and connection with railroad work was in an entirely different line, and we do not find, as stated in appellee's brief, that he testified particularly to the danger attending the defect. Referring to the reference which we are given supporting this statement, we find he merely testified to the cause of the sudden stop and fall, and not to any knowledge of the danger which caused it. For the reasons indicated, the charge as given was erroneous, and will require a reversal of the case.

It is contended by appellee that assumed risk as a defense in bar was not an issue in the case, and therefore the erroneous qualification by the court of this doctrine was harmless. By Act April 24, 1905 (Acts 29th Leg. c. 163), assumed risk as a defense arising from knowledge of a defect and the danger incident thereto is not available when a person of ordinary care would have continued in the service with knowledge of such defect and danger. In Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530, it was said by Chief Justice Gaines that this section practically abolished the distinction between contributory negligence and assumed risk arising from such knowledge. By the Employer's Liability Act (Laws 1909, p. 279), it was provided that in an action by an employé against a railway corporation contributory negligence would not bar a recovery, but the damages would be diminished by the jury in proportion to the negligence attributable to the employé.

It is therefore asserted that assumed risk, under the act of April 24, 1905, is nothing more than contributory negligence, and by virtue of the Employer's Liability Act is not available to the defendant as a defense in

bar, but merely to diminish the damages, and the court improperly submitted the same as a defense; and, since it was improper to so submit the same, an erroneous qualification was not prejudicial. It may be true that the distinction between the two defenses has been practically abolished, but under the provisions of the Assumed Risk Statute as originally enacted the defense was an absolute one when a person of ordinary care would not have continued in the service with knowledge of the defect and danger, and we are of the opinion that this effect of the statute was not changed by the provisions noted of the Employer's Liability Act with reference to contributory negligence.

Under the third assignment, a portion of the charge is criticised as being argumentative and upon the weight of the evidence. It is not so regarded.

[5] In submitting the measure of damage the charge authorized a recovery for the amount expended by the plaintiff for medicines. There is no testimony in the record to show the reasonable value of the medicines used, the plaintiff having simply testified that he paid between $120 and $130 for medicines, and under the decisions the assignment complaining of this phase of the charge must be sustained. Wheeler v. Railway Co., 91 Tex. 356, 43 S. W. 876; Railway Co. v. Hemphill, 125 S. W. 340; Railway Co. v. Hall, 138 S. W. 434; Railway Co. v. Morris, 45 Tex. Civ. App. 596, 101 S. W. 1038; Railway Co. v. Greb, 132 S. W. 489. This, however, could be cured by a remittitur; and, in any event, the question need not arise upon retrial.

[6] A charge must be considered as a whole, and, so considering same, that portion of the charge complained of under the fifth assignment is not subject to the objections urged, and we do not think the jury was left in any doubt whatever by the paragraph objected to.

[7] In the petition it is alleged that at the time plaintiff sustained his injuries he was a healthy man. He testified he was 45 years of age at the time, in good health, and strong mentally and physically.

Dr. Stuart, witness for defendant, examined him, and testified that he was suffering from an injured and diseased sciatic nerve; that he suspected he had syphilis in the tertiary stage; that plaintiff's injury was the exciting cause of the present diseased condition of the nerve—in other words, that the injury set aflame an original dormant syphilitic condition, and so aggravated the same as to produce the condition from which plaintiff was suffering; without injury to the sciatic nerve the condition would have manifested itself in some other locality; that the injury operated upon a syphilitic condition and produced the serious results from which plaintiff was suffering. If he did not have and had not had syphilis, the injury complained of, in his opinion, would not have produced a permanent injury to the leg; that the syphilitic condition made him more susceptible to injurious consequences from the injury than he otherwise would have been; that the injury might not have produced these serious consequences without the syphilitic condition, but with that condition it did produce them. If he has not tertiary syphilis, he should recover within 12 months from date of injury under proper treatment. The testimony of two doctors testifying in plaintiff's behalf negatived the idea that he was in a syphilitic condition.

Upon this phase of the case the jury was instructed:

"If you believe from the evidence that alleged injuries to plaintiff, if any, were not due to the fall in question, but to a syphilitic condition in him or other independent cause or causes, then to that extent you will allow plaintiff nothing therefor.

"Although you may believe from the evidence that plaintiff on account of a syphilitic condition, if such he had, was liable to and suffered alleged injurious consequences from the fall in question which he would not otherwise have suffered, yet this would not prevent him, if your verdict is in his favor, from recovering compensation to the full extent for such injurious consequences, if any, provided you believe from the evidence such were a natural and probable result of the fall in question to one in his physical condition."

Error is assigned to the last paragraph of the charge quoted allowing compensation for such injurious consequences resulting from the fall in question to one in plaintiff's physical condition. It is not contended that the same does not properly submit a correct proposition of law, but the sole contention is that it was not authorized by the pleadings.

It is conceded by appellant that damages resulting from injuries operating on a diseased condition can be recovered if the natural result of the wrong, although such injuries would not have resulted but for the diseased condition, but the gist of the defendant's contention is that they cannot be recovered unless the pre-existing diseased condition is alleged and especially where it is specifically alleged as here that plaintiff was healthy. Reduced to its last analysis, this is the effect of the contention, and we are not prepared to agree with it. That the issue is certainly raised by the pleadings we think clear, as the general denial did this. This puts in issue every material allegation in the petition including the allegation of plaintiff's healthy condition, and what caused the accident and the consequences alleged to have resulted therefrom, and, since this was raised by the defendant's pleadings and evidence, it was then the duty of the court to apply the law applicable to

the rights of both parties, as it was developed by the evidence.

In Green v. Houston Electric Co., 40 Tex. Civ. App. 260, 89 S. W. 442, this same question was presented in a different form, and it was there remarked by Judge Reese that "healthy" is but a comparative term, and in declining to assent to the doctrine contended for said: "We cannot, however, give our assent to a rule which in its logical application would put upon a plaintiff the danger of being turned out of court if he should not state in his petition every physical weakness or ailment which might be aggravated in its effect by an injury wrongfully inflicted upon him. We cannot find that the doctrine referred to has ever been approved elsewhere; and, while we have not been able to find any case denying it, it is at least persuasive that in a multitude of cases examined it appears that persons have been held to be entitled to recover damages for aggravation of a previously diseased physical condition where the allegations of the petition made no reference to such condition." This quotation has our entire approval.

The Hall Case, 114 Mich. 99, 72 N. W. 33, and the Wilkinson Case, 73 Mich. 405, 41 N. W. 490 (the latter discussed by Judge Reese in the Green Case), cited and relied upon by appellant as supporting its contention that the charge in question was erroneous, are not applicable. In the Wilkinson Case it was held under a declaration alleging infirmities, caused directly and altogether by the accident, a recovery could not be had for an aggravation of pre-existing infirmities, and in the Hall Case that a recovery of damages would not be allowed for an augmented or aggravated rheumatic condition resulting from the accident because not pleaded. Thus we see the adversely cited cases relate only to an aggravation of an existing infirmity, when the allegation was that the accident had caused the infirmity, and not the aggravation.

Now the charge in question is predicated upon no such theory, but merely authorizes a recovery although plaintiff, on account of a syphilitic condition, was liable to and did suffer injurious consequences from the accident, which he otherwise would not have suffered, the correctness of which as an original legal proposition is not questioned, and which is quite distinct from a recovery for an aggravated syphilitic condition. An extract from the Hall Case, supra, is regarded as so aptly illustrating the unsoundness of appellant's contention that the same is quoted as follows: "The defendant succeeded in eliciting, upon cross-examination of the plaintiff, that some years before she had rheumatism. It is said that she had rheumatism in her feet, some years before, and that the court ruled that, if she had, it would not preclude her recovery of damages for the injury actually sustained. It was contended that this might have been a correct rule to apply had the rheumatism and its aggravation been alleged in the declaration. We think that it is not required of a plaintiff in an accident case to anticipate all imaginable theories that the ingenuity of counsel may be able to devise, and to set up in her declaration all physical conditions that have existed from remote periods, and that the failure to do so is to deprive her of redress, if any of them come to the surface on the trial. If the defendant could show that the plaintiff's ailments were not attributable to the accident, it would defeat her recovery or lessen damages; but, if she actually bruised her knee and hip, the fact that she had rheumatism would not preclude recovery for her pain and suffering, attributable solely to the accident, although she was more susceptible to suffering by reason of her rheumatism."

Special charge No. 4, in so far as proper, was in substance given in the general charge of the court, and its refusal was proper for this reason, as well as for the further reason that it was argumentative.

The substance of special charge No. 5 was likewise incorporated in the general charge, and its refusal in no manner calculated to prejudice the defendant. The seventh and eighth assignments are therefore overruled.

[8] The ninth assignment reads: "The court erred in overruling the motion for a new trial, because the verdict of the jury was clearly excessive." This assignment is too general to entitle it to consideration. Railway Co. v. Goodrich, 149 S. W. 1176; Railway Co. v. Geer, 149 S. W. 1178; Clarke v. First State Bank, 150 S. W. 203. Furthermore, in view of a reversal on other grounds, we should refrain from comment upon the amount of the verdict.

Reversed and remanded.

### On Rehearing.

[9] With his motion for rehearing herein appellee enters a remittitur of $130, the utmost amount testified to as expended for medicines, which cures the error with respect to the measure of damage noted in the original opinion.

[10, 11] In our original opinion we held the court erred in that portion of his charge wherein the issue of assumed risk was submitted, and that the error required a reversal of the cause. We adhere to the view that the charge was erroneous, but the majority of the court are now of the opinion that the improper qualification of the issue of assumed risk was not reversible error. Under the act of April 24, 1905 (article 6645, Revised Statutes of 1911), assumed risk as a defense arising from knowledge of a defect and the danger incident thereto is not available when a person of ordinary care would have continued in the service with knowledge of such defect and danger. The effect of this statute is to merge assumed risk arising from knowledge of a defect and the danger incident

thereto into a question of contributory negligence. Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530. Under the Employer's Liability Act (Revised Statutes of 1911, art. 6649) contributory negligence of a railway employé does not now bar a recovery, but the damages are to be diminished by the jury in proportion to the amount of negligence attributable to such employé. It therefore logically follows that assumed risk as a defense arising from knowledge on the part of plaintiff of any defect in the drawhead of the car as a defense in bar was not an issue in the case, but available only in mitigation of damages as contributory negligence. In Railway Co. v. Grenig, 142 S. W. at page 139, it was held proper in view of the Assumed Risk Statute and Employer's Liability Act, to refuse a charge submitting the issue of assumed risk in bar where the basis of the plea was knowledge of the defect and danger. The charge of the court submitted the issue of assumed risk arising from knowledge of the defective drawhead as a defense in bar. Therefore the improper qualification of the doctrine noted in the original opinion obviously did not operate to defendant's prejudice, since under no circumstances should it have been submitted in bar. Railway Co. v. Elmore, 35 Tex. Civ. App. 56, 79 S. W. 891; Railway Co. v. Gray, 137 S. W. 729.

The ninth assignment, complaining of the amount of the verdict, is overruled. An examination of the evidence clearly discloses it to be in no wise excessive.

Associate Justice McKENZIE adheres to the view that the charge as given constitutes reversible error, and that the motion for rehearing should be overruled. The majority, however, for the reasons indicated, are of the contrary opinion. The motion for rehearing is therefore granted, and, subject to the performance of the remittitur above noted, the judgment of the lower court is in all things affirmed.

McKENZIE, J. (dissenting). In the majority opinion granting a rehearing and affirming this cause it is held that assumed risk as modified by the act of April 24, 1905 (article 6645, Revised Statutes 1911), is no longer available as a plea in bar since the passage of the Employer's Liability Act (article 6649, Revised Statutes 1911). This upon the theory that in the case of Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530, it was said by our Supreme Court that the effect of the article 6645, supra, was to merge assumed risk arising from knowledge of a defect and the danger incident thereto into a question of contributory negligence, and that under article 6649, supra, contributory negligence was made no longer a defense as a bar to a recovery, but may be urged for the purpose only of diminishing the amount of damages.

I cannot agree to the process of reasoning as shown in the opinion on rehearing. In the first place, it only requires the reading of the facts in the Mathis Case, supra to convince one that the facts in that case did not involve the application of article 6645, supra. In Railway Co. v. Grenig, 142 S. W. 135, cited in the majority opinion on rehearing, an examination discloses the fact that the requested charge which the trial court refused upon the issue of assumed risk ignored absolutely the provisions of article 6645, supra, and should have been refused because of that fact. Prior to the passage of the act of April 24, 1905 (article 6645, supra), the defenses of assumed risk and contributory negligence were distinct and independent of each other. In my opinion they yet remain distinct and independent of each other. As said in Railway Co. v. McHale, 47 Tex. Civ. App. 360, 105 S. W. 1149: "It is often difficult to distinguish between assumed risk and contributory negligence when the law applicable to these distinct defenses is sought to be applied to the facts of a particular case. Whenever one is consciously negligent in the doing of an act or in the failure to act, he might be said to assume the risk of such negligence, but this is not assumed risk as that term is used in the rule of law which exempts the master from liability for injury to the servant due to a cause ordinarily incident to the service in which he is engaged, or from injury due to the dangerous condition surrounding the service, of which the servant had notice, or in the exercise of ordinary care should have known. One may be so careful as to be entirely free from negligence in the manner in which he performs his work, and yet, because of the danger necessarily incident to the work, or due to conditions within his knowledge, or of which he must have known had he exercised ordinary care, he cannot recover for injuries while in the performance of such work on the ground that he has assumed the risk of such injuries." So it is recognized that the defense of assumed risk rests on the fact that a servant voluntarily exposes himself to danger and thus assumes the risk thereof, while the defense of contributory negligence rests on an omission of duty on the part of a servant, and is available, though the master was negligent where the proximate cause of the injury was the servant's negligence. The two defenses are based, therefore, upon different principles of law, and by article 6645 limitations or conditions are made by the statute which limitations or conditions are provisions stating when assumed risk is not available as a defense, but, subject to the limitations or conditions therein stated, the principle of assumed risk, as heretofore announced, is left intact, and I do not understand that the statute undertakes to abolish the defense when the conditions as named in the statute are not present which would eliminate it as a defense. Assumed risk as a defense does not partake of the principle of contributory negligence, and for

that reason when the defense of assumed risk is available it is not contributory negligence, and, not being contributory negligence, article 6649 would not be applicable.

The original opinion properly disposes of this cause, according to my views of the law, in that it is admitted in the original opinion, and in the majority opinion on rehearing, that the charge of the court upon the question of assumed risk as applicable to the cause under article 6645 was incorrect, and being incorrect, in that it placed a greater burden upon the defendant than was authorized by said last-named article, the case should be reversed and remanded for a new trial.